HUNTINGTON *vs.* MATHER.

*Where stocks are deposited with the lender of money, as collateral security for the loan, with authority to the lender to sell the same, on the non-payment of the sum borrowed, the transaction is a mortgage and not a pledge; and on default of payment, the title to the stocks becomes absolutely vested in the lender; and the right of the borrower to redeem may be barred by the statute of limitations, or the lapse of time.*

IN EQUITY.   This was an appeal, by the plaintiff, from a decree of the assistant vice chancellor, dismissing the bill of complaint.   On the 1st of October, 1825, the plaintiff gave the defendant his note in the following words:

"$14,600.                              New-York, October 1, 1825.

Four months after date I promise to pay to Samuel Mather, Esq. or order, fourteen thousand six hundred dollars for value received, with interest at the rate of six per cent, having deposited with him as collateral security (with authority to sell the same on the non-performance of this promise) 125 shares Bank of America stock, 34 shares Mechanics' Bank stock, and 50 shares Franklin Bank stock.   BENJAMIN HUNTINGTON."

The note was not paid at maturity, nor was any interest ever paid upon it.   The Franklin Bank failed, and that stock be-

Huntington v. Mather.

came valueless. The Mechanics' Bank stock was sold, and the avails were paid over to Mather. All the stock was transferred to Mather at the time the note was given, and he continued to receive the dividends on the Bank of America stock until 1839, when the bill in this cause was filed to redeem it. In 1828 the plaintiff failed in business. At that time, the Bank of America stock was all that was left in the defendant's hands, and it was so much below par, as, at its then market value, to fall about $2500 below the amount of the note. The plaintiff compromised with his creditors, and among others took from the defendant a paper "discharging the plaintiff from all legal responsibility to him, and waiving all right of action against him for any indebtedness he might be under to him of all sorts and kinds whatsoever." But that was "not to affect any of the hypothecations or liens any of the subscribing parties might severally have and hold on stock of various kinds pledged to each respectively." The bill was filed in July, 1840, and set up that the plaintiff's receipts of dividends on the Bank of America stock, and for sales of Mechanics' Bank stock, had reduced the debt to $11,931,40, which he offered to pay. The decree of the assistant vice chancellor was based on the ground that the suit not having been commenced till more than ten years after the revised statutes went into effect, it was barred by 2 *R. S.* 301, § 52.

*N. Merrill & B. F. Butler*, for the plaintiff. I. The plaintiff had a right to redeem the stock pledged to secure the payment of his note to the defendant, at any time prior to the sale of such stock in satisfaction of the note. (*Cortelyou* v. *Lansing*, 2 *Caines' Cas. in Err.* 200. *Allen* v. *Dykers*, 3 *Hill*, 593; *Same case in error*, 7 *Id.* 497. *Story on Bailm.* p. 197, 198, §§ 286, 287, 290; *Id. p.* 207, § 308; *Id. p.* 211, 212, § 315; *Id. p.* 213, § 318; *Id. p.* 234 *to* 336, § 345 *to* 348; *Id. p.* 242, § 362; *Id. p.* 232, § 343. *Story on Eq.* § 1032, *and cases cited.* 1 *Powell on Mort.* 133, n. *Id.* 253, 262, 363. *Hart* v. *Ten Eyck*, 2 *John. Ch. Rep.* 30. 3 *Bro. C. C.* 663. *Ratcliffe* v. *Davis, Cro. Jac.* 245.) II. The plaintiff's right of redemption is not barred by any of the matters set up in the answer. The

release executed in November, 1828, did not extinguish or affect such right. It recognized and continued it. (*Coote on Mort.* 33, 34. 2 *Story's Eq.* § 1031. 2 *Fonb. Eq.* 529, *note.*) It is not barred by the statute of limitations. That statute having been passed after the plaintiff's right of action accrued, and being prospective in its terms, cannot have a retroactive effect. The defendant having been, also, a non-resident. (2 *R. S.* 2d ed. *p.* 225, § 52. *Vin. Abr. tit. Statute,* 513, 514, 524, *and cases cited.* 2 *Inst.* 292. *Williamson* v. *Field,* 2 *Sandf. Ch. Rep.* 568. *Didier* v. *Davison,* 2 *Barb. Ch. Rep.* 477. *Dash* v. *Vankleeck,* 7 *John. Ch. Rep.* 477.) Besides, even if the statute be regarded as applying to the case, the proofs show that the defendant, within ten years before the filing of the bill, acknowledged the existence of the pledge, and of the plaintiff's right of redemption, and by such acknowledgment this right was continued in full force. (*Brocklehurst* v. *Jessup,* 7 *Simons,* 438.) Neither is the plaintiff's right of redemption barred by lapse of time. III. The plaintiff is entitled to an account, and the defendant should account for the value of the stock as of the 2d of June, 1839, the day of the plaintiff's offer, and should be directed to deliver up the stock note.

*A. P. Man & D. Lord,* for the defendants. I. The transfer of the stocks and the note of October 1, 1825, conveyed the title and possession of the stocks to the defendant, conditioned to be void on the payment of the note. The transaction was a mortgage, and not a pledge; and after the day of payment mentioned in the note had passed, was only redeemable in equity. (4 *Kent's Com.* 138. *Powell on Mort.* 3. 8 *John. Rep.* 97, 98. 9 *Wend.* 80. *Story on Bailm.* § 287.) II. The release of the debt, by the instrument dated July 29th, 1828, executed in Nov. 1828, was a release of the right to redeem, and an acceptance of the mortgaged fund and the other claims therein mentioned, in full satisfaction of the debt. It was valid as an accord and satisfaction. The retaining of the note which was then past due, after the execution of the accord, was consistent with the extinguishment of the claims on each side. (5 *John.*

386. 2 *Barn. & Ad.* 328. 1 *Cowen*, 122. 7 *Cranch*, 218.)
Lapse of time is full presumptive proof of a reciprocal abandon-
ment or satisfaction of the right to demand the debt, and the
right to. redeem the pledge. (5 *John. Ch. Rep.* 550, 551. 2
*Atk.* 303. 3 *John. Ch. Rep.* 586. *Story's Bailm.* § 245. 1
*Mad. Ch.* 99, 100. *Broom's Leg. Max.* 300, *and cases cited.*
*Best on Presump.* 188, 42.) III. The equity of redeeming is
barred as a stale and deserted claim, by the lapse of time from
Nov. 1828, till the filing of the bill in 1840; especially consid-
ering that no account of interest has been kept by either mort-
gagor or mortgagee; that the interest on the note was only six
per cent per annum; that the stock was worth less than the
debt, and was intrinsically of fluctuating value; that the com-
plainant was insolvent; and that it is altogether inequitable to
allow the defendant to have borne the risk without his being
allowed the advantage. (7 *Wheat.* 59. 10 *Wend.* 365. 3
*Bro. C. C.* 639, *note. Angell on Lim.* 176. *Story's Eq. Pl.*
§ 757. 1 *Mad. Ch.* 99, 100. 1 *Story's Eq.* § 529. 2 *Id.* 736,
§ 1520, *note.* 3 *John. Ch.* 586. 2 *John. Cas.* 432. 5 *John. Ch.*
550, 551. 2 *Story's Eq.* § 1032. *Jackson* v. *Sackett,* 7 *Wend.*
94, 98, 9. *Mathews on Presump.* 381, 445. 2 *Story's Eq.*
§ 776. *Doloret* v. *Rothschild,* 1 *Sim. & Stu.* 590. 7 *John.*
*Ch. Rep.* 120, &c. 3 *Id.* 135, 136, 1 *Ball & Beat.* 166. 1
*Sugden on Vend.* 301.) IV. The statute of limitations of 1830
(2 *R. S.* 301, § 52) applies to the case, and is an absolute bar;
the right being one of exclusive equitable jurisdiction is barred
in ten years after the right accrued, and the statute was appli-
cable. The bill was not filed before July 25, 1840. (*See* 7
*John. Ch. Rep.* 110; 3 *Paige*, 416, 417; *Lawrence* v. *Trustees*
*of Leake and W. Orph. House*, 2 *Denio,.* 583; *People* v. *Su-*
*pervisors of Columbia*, 10 *Wend.* 363; *Story's Confl. of Laws,*
§ 576; 1 *Kent's Com.* 461, 2; 6 *Bing.* 258, 265.) V. There
was no allusion to the debt, nor to the property as held in mort-
gage by the defendant, during the ten years following the first
of January, 1830. The onus of proving that the defendant has
treated the stock as redeemable, is on the plaintiff. VI. The
brokerages chargeable by the plaintiff but never charged by

him, cannot, without an admission of their being applicable as payments of interest on an acknowledged mortgage, renew the right of redemption.    To have such effect, they ought at least to have been such as would have revived the debt, and been accepted by the defendant for that purpose.    (5 *Cowen*, 619. 20 *John.* 576, *per Spencer, J.*    1 *Edw. Ch. Rep.* 426, 427.    6 *Pet.* 167 *to* 169.    15 *Wend.* 556.    *Ang. on Lim.* 136, 137.)

*By the Court,* EDMONDS, J.    It seemed to be conceded on the argument that unless the original transaction between these parties was a pledge of the stock in question, the plaintiff's bill could not be sustained ; and therefore it was that so much of the argument was directed to that point.    One consideration very strenuously urged was the expression used in the note that the stock had been " deposited as collateral security," which it was insisted conveyed the idea of a pledge, and that alone.    But such an expression is not of itself sufficient to determine the character of the transaction ; for it has been held that even the use of the word " pledge" has not that effect, *ex vi termini,* and where it is the clear intent of the parties that the possession of the goods, &c. shall remain in the debtor until default in payment, it will be regarded as a mortgage, even if the word pledge is used.    (*Langdon* v. *Buel,* 9 *Wend.* 80.    *Reeves* v. *Capper,* 5 *Bing. N. C.* 186.    *Ferguson* v. *Union Furnace Co.* 9 *Wend.* 345.)

There are two leading consideration to be regarded in determining whether the transaction is a pledge or a mortgage : namely, the title and the possession.    If it is a mortgage, the legal title passes to and is vested in the creditor.    (*Story on Bailm.* § 287.    *Langdon* v. *Buel, supra.    Patchen* v. *Pierce,* 12 *Wend.* 61.)    With a pledge it is different ; the legal title until a sale on default of payment or redemption, continuing in the pledgor.    (*Story on Bailm. supra.    Cortelyou* v. *Lansing,* 2 *Caines' Cas. in Error,* 200.    2 *Kent's Com.* 581.)    The pawnee has indeed a qualified property in the article pledged, but upon a tender to him of the debt, he becomes divested even of that qualified property, and becomes a wrongdoer if after

Huntington *v.* Mather.

that he persists in retaining the article pledged, from the pawner. (*Story on Bailm.* §§ 339, 341. *Coggs* v. *Bernard*, 2 *Ld. Raym.* 916.) The essential difference as to matter of right is, that in one the title passes, and in the other it does not. But the difference in substance and fact is, that in the case of a pawn or pledge, the possession must pass out of the pawner, but in the case of a mortgage it need not. In this case the possession and title both passed out of the debtor. The passing of the possession is consistent with either character; though if it had not passed, it would have been a mortgage. That fact will not therefore help to determine the question in this case. But the passing of the title to the creditor is decisive. If that had not happened, it would not be a mortgage. Having happened, it cannot be a pledge.

The result is that the deposit of these stocks by the plaintiff was a mortgage. It has all the characteristics of a mortgage, and is wanting in one of those essential to its being a pledge. Being a mortgage, on default of payment, the property became absolutely vested in the defendant. Such was the legal effect, and such seems to have been the intention of the parties; for the note provides that the defendant may sell the stock on the non-performance of the promise to pay; thus conferring on him another of the indicia of ownership, viz. the absolute power of disposal. This being, then, a mortgage, and not a pledge, it is not within the rule stated on the argument that it was always redeemable until sold; and it may be barred by the statute of limitations or the lapse of time.

The view that we take of this case, renders it unnecessary for us to consider the effect of the statute of limitations as to suits in equity, on which the decision below mainly rested. Without expressing any opinion on that point, we think that the staleness of the demand ought to bar the plaintiff's action. The note was barred by the statute of limitations in February, 1832, so that after that date it ceased, at the option of the maker, to be binding on him. If the stock depreciated in value, so as to leave a deficiency in paying the amount loaned, or if it became utterly worthless, nothing could be collected of the borrower.

Huntington v. Mather.

He was discharged from his obligation. If he had been thus discharged by payment, he could have demanded his stock back again. Could he not do so, if he was discharged from that obligation by the operation of law? It is to be feared that he might, were it not for the equitable rule of mutuality and the application of the bar of the lapse of time to both the parties to the contract and to the rights and obligations of both. We are therefore of opinion, in analogy to the statute of limitations, that the right to redeem ceased in February, 1832; and this bill not being filed till years afterwards, cannot be sustained.

Again, the agreement of 1828 barred the plaintiff's right to recover. That was a discharge of the plaintiff from all legal responsibility to the defendant. No action could afterwards be brought against him, to make up any deficiency in the sum loaned to him. At that time there was a large deficiency. One of the banks having failed, and the stock of the other being below par, if the transaction had then been closed by a sale, the avails would, at the then prices, have fallen several hundred dollars short of paying the debt. The effect of the agreement was to release the plaintiff from any liability to make up this deficiency, to discharge him from all legal responsibility to the defendant for any part of the loan, and to waive all right of action against him for any indebtedness to the defendant " of all sorts and kinds whatsoever." If after that he had any right to demand a return of the stock, it was a right to have it back without paying any thing; because his debt was discharged as fully as if he had paid it. This was evidently not the intention of the parties; for the instrument then signed contained an express stipulation against its so operating. The agreement could operate only in one of three ways: either by discharging the debtor entirely from his responsibility and leaving to him the right to a return of the stock, without paying any thing; or to discharge him from his debt and leave the stock as the property of his creditor in lieu of his claim; or to keep alive the debt, and with it, the right, by paying it, to redeem the stock, with the personal obligation to make good any deficiency. The latter could not be true, because the debt, and all liability

---

to make up any deficiency, were absolutely discharged. The former was prevented from being true by the express stipulation of the instrument; and the only alternative left is that which took away from the plaintiff, in July, 1828, all right to redeem the stock, at the same time that he was discharged from all liability to make it good. The decree of the assistant vice chancellor must be affirmed with costs.

