Parshall *v.* Eggart.

## PARSHALL & SCHANZLIN *vs.* EGGART, sheriff of Erie county.

R. a produce, forwarding and commission merchant, on applying to the plaintiffs to discount his promissory note, attached to such note, as collateral, a paper or receipt, signed by him, as follows: "Received in store, for account of Mess. P. & S. subject to their order, the following named property, as security to my note given this day," (describing the note, and specifying the property;) whereupon the plaintiffs received the note and receipt, and advanced to R. the avails of the note. There was no manual or symbolic delivery of the property to the plaintiffs, at the time, the same remaining in R.'s store, and he transacting business there as before.

*Held,* 1. That the receipt was not a *chattel mortgage*; and, if it were, it was void as against creditors of the mortgagor, because there was no immediate delivery of the property, followed by an actual and continual change of possession, nor was it filed as a chattel mortgage, as required by the statute.

2. That the transaction, in its legal effect, did not constitute a *pledge;* the subject thereof not having been delivered; and that, although the plaintiffs had, in a lawful manner, before a levy made thereon, under an attachment against R. at the suit of another creditor, obtained the actual possession of the property, they were not entitled to the rights and protection of *bona fide* pledgees.

3. That the possession of the storehouse, gained by the plaintiffs, with the consent of R. shortly before the property was levied on under such attachment, did not constitute a good delivery, as against the attaching creditor.

THIS is an action of replevin, brought to recover the possession of a quantity of mill feed, described as bran and fine middlings. The defendant justified the taking, under an attachment issued and directed to him, as sheriff of Erie county, in an action wherein George Hunter was plaintiff and John Roche was defendant; and alleged that, on the 3d of January, 1867, he attached the property in question as the property of the said John Roche.

On the 13th day of December, 1866, the plaintiffs were bankers, doing business in Buffalo. John Roche was, at the time, a flour and feed merchant in Buffalo, in the possession of, and doing business in his own name, at warehouse No. 59 Main street. He was doing business with the plaintiffs, and had been accommodated with loans and discounts, and then owed them some $3000. On that day Roche applied at the plaintiffs' banking house for a discount of $1480, and presented to the plaintiffs a note, of which the following is a copy:

"BUFFALO, Dec, 13, 1866.

Twenty days after date, I promise to pay to the order of Messrs. Parshall & Schanzlin, fourteen hundred and eighty dollars, at their banking house on Main street, value received.                    JOHN ROCHE.

$1480.00."

At the time of presenting the note for discount, there was attached to it a paper, or receipt, in the following words and figures:

(Printed.)    " JOHN ROCHE,
Produce, Forwarding and Commission Merchant, No. 59 Main street."

(Written.)                " BUFFALO, Dec. 13, 1867.
Received in store, for account of Mess. Parshall & Schanzlin, subject to their order, the following named property, as security to my note, given this day for fourteen hundred and eighty dollars, for twenty days from date:

| | | |
|---|---|---:|
| 55 tons fine middlings @ 24, | . . . . . . | $1,320 00 |
| 10 " bran @ 20, | . . . . . . . . . | 200 00 |
| | | $1,520 00 |

(Signed,)                . JOHN ROCHE."

Roche then informed Parshall, one of the plaintiffs, that the property was in his warehouse. This is all that was said or done concerning the property named in the receipt, at that time. This was at the banking house. There was no proof showing how much of this kind of property Roche had in his store, how it was kept, nor how long it had been there. The plaintiff received the note and receipt from Roche, and advanced him the avails of the note.

Between the 19th and 26th of December, 1866, George Hunter, the attaching creditor, sold and delivered to Roche a quantity of mill feed, amounting to $1100, on which Roche paid $300, and the balance is the demand on which his action, wherein the attachment issued, was founded.

Roche's note to the plaintiffs matured on the 5th of January, 1867, and was not paid, and previous thereto he had absconded. On that day, after banking hours, and between three and five o'clock P. M., Schanzlin, one of the

VOL. LII.        24

plaintiffs, went to the store, and found it in charge of John Hause, Roche's clerk. He went over the store. Showed the receipt to the clerk, saying: "There is the paper that shows our right." Thereupon the clerk handed him the keys to the store. He locked up the store, taking the keys away with him, and about six o'clock the sheriff went to the store, found it locked, got a smith to open it, went in, and made a levy, by virtue of the attachment, on all the goods in the store. Among the stock there was of the character mentioned in the receipt, in all, $10\frac{826}{1000}$ tons of bran, and $21\frac{1}{4}$ tons of fine middlings. The plaintiffs gave evidence tending to prove "that the bran and middlings in said warehouse, January 15, 1867, was the same that was on hand there at the time said receipt was given to the plaintiffs, Dec. 13, 1866." On Monday, the 7th of January, the plaintiffs demanded the bran and middlings of the sheriff, who refused to deliver up the same. This action was then commenced, and the property replevied and delivered over to the plaintiffs. It was commenced before Hunter perfected judgment against Roche; and the sheriff relied wholly upon the warrant of attachment to justify his taking.

The judge, at the circuit, granted a nonsuit. The plaintiffs excepted, and an order was made directing the exceptions to be heard here, in the first instance.

*Cornwell & Miller,* for the plaintiffs.

*James C. Brown,* for the defendant.

*By the Court,* BARKER, J. The plaintiffs rely upon the paper given them by Roche, at the time of the loan by them to him of the $1480, as securing to them a lien on the property in dispute, which they can enforce, as against the creditors of Roche. It is quite apparent that they must rely upon the legal effect of the instrument, as there

was nothing done at the time of its execution and delivery, or afterwards, that can be brought to their aid, in determining their rights, in this struggle for the property, between themselves and the other creditors of the absconding, and, as we may assume, the insolvent debtor.

In determining the question in dispute, but little aid will be afforded us in seeking to ascertain what were the plaintiffs' right in, and claims upon, this property, between them and John Roche. That, as against him, the receipt would authorize them to take possession of and hold the property named therein, is admitted. After this transaction, on the 13th of December, and before the 5th of January, and while it was, in fact, an unpublished security, other persons become his creditors, and Hunter sells and delivers him property, for which he has not received his pay, and the plaintiffs' rights are brought to the test which the law imposes—whether they are such that the creditors of Roche can disregard or evade them.

The plaintiffs insist that it is an instrument in the nature of a mortgage, and if it is not that, then it is a pledge valid in law.

A chattel mortgage is an instrument of sale, conveying the title of the property to the mortgagee, with terms of defeasance, and if the terms of redemption are not complied with, then at law, the title becomes absolute in the mortgagee. The nature of the agreement must be such that by the mere non-performance of the condition by the mortgagor, the title will be transferred to the mortgagee by the force of the agreement. This test is decisive. (*Story on Bailment,* §§ 288, 287. *Huntington* v. *Mather,* 2 *Barb.* 538. *Brown* v. *Bement,* 8 *John.* 96. *Langdon* v. *Buel,* 9 *Wend.* 83. *Brownell* v. *Hawkins,* 4 *Barb.* 491.) This paper must be read in view of the fact that Roche was the owner of the property mentioned, and was in the actual possession of the same. On its face it purports to be an acknowledgment of receiving the property of another

to be accounted for and held subject to the order of the plaintiffs. Then follows the condition, that it is held as a collateral security for the payment of his own note, a stipulation or condition that is only consistent with the idea that he is the owner and the only party interested in the property receipted, and such was the fact; and all that affirms that he has come into the possession of the property from the hands of the plaintiffs or from others for their benefit, must be rejected as repugnant to the other provisions of the instrument.

It is not a chattel mortgage; it contains no words of sale. The only implied power of sale contained in the paper, is reserved to Roche himself. Had the plaintiffs got possession of the property, they were not empowered to sell, or to do any act towards disposing of the same. If it is a chattel mortgage, in effect, as it is not in terms, then, on the non-payment of the note, the title at law would have been complete in the plaintiffs, and the only remaining interest in Roche or his creditor, an equity of redemption. In my judgment this transaction does not produce this result.

But for the plaintiffs to assume that this is a chattel mortgage, and successfully maintain the proposition, is it sure to defeat all right to recover, for the reason that there was not an *immediate delivery* of the goods mortgaged, followed by an actual and continued change of possession. In such cases the statute declares the transaction absolutely void, as against the creditor of the mortgagor, unless the mortgage be filed. This instrument was not filed. The plaintiffs answer, that before Hunter became a creditor within the meaning of the statute, they had got the actual possession of the property, and for that reason the failure to file does not embarrass them. Admitting that they assumed full and complete possession of the goods, before the attachment issued, then they are not at all free from the penalty imposed by the statute for not filing the mort-

Parshall *v.* Eggart.

gage. The object of the statute is to force parties to make public securities of this character, and to vitiate all negotiations of this nature, which are secret. There must be an immediate delivery and an actual and continued change of the possession of the things mortgaged, or a filing in the proper office. The filing must be as soon as is practicable 'after the mortgage is delivered. The mortgagee cannot keep a security of this class a secret, and proceed to enforce it the moment the other creditors of the mortgagor are ready to seize the property by legal process, and thwart the purpose of the vigilant creditor, by filing the mortgage or taking into his possession the property. If this could be tolerated all the beneficial purposes of the statute would be gone.

The case of *Thompson* v. *Van Vechten*, (27 *N. Y. Rep.* 581, 582,) is a direct authority on all these points. In that case the controversy was between a mortgagee and judgment creditor, who had levied on the boat which was the subject of the mortgage. The mortgage was made and delivered in February, 1854, and was not filed until one month after the debt of the judgment debtor was. created. The mortgage was filed July 7, 1854. The judgment was not recovered till March 16th, 1855, and levy was made the next day. It was held that the levy was a lien ahead of the mortgage on the ground of the omission to file the same. It will be observed that the mortgage was, in fact, filed eight months before judgment was recovered and levy made, but the debt was contracted after the giving of the mortgage and before the filing. In this case Hunter's debt was created after the giving of the mortgage, and the plaintiffs did not attempt to secure a delivery of the goods to themselves, until the very hour Hunter was ready to attach the goods, and twenty-three days after giving the instrument claimed to be a mortgage. Chief Justice Denio, in the above cited case, makes these sensible comments on the statute: "But it was the apparent, and, I

think, the real object of the act, to prevent the setting up
of secret mortgages, against persons who might deal with
the mortgagor, on the faith that his property was unin-
cumbered. It is true the mortgage cannot be legally
questioned until the creditor clothes himself with a judg-
ment and execution, or with some legal process against
his property; for creditors cannot interfere with the prop-
erty of their debtor without process. But when they
present themselves with their process, they may, I think,
go back to the origin of their debt, and show, if they can,
that when it was contracted, the incumbrance with which
they are confronted existed and was kept a secret, by being
withheld from the proper office."

The next proposition presented and urged by the plain-
tiff's counsel is, that the transaction, in its legal effect,
constituted a pledge, and that the plaintiffs having in a
lawful manner secured the actual possession, prior to the
sheriff's levy by attachment, they are entitled to all the
rights and protection of a *bona fide* pledgee. All there is
in the plaintiff's case, upon which an argument can be
based, is in this precise point.

A pledge consists of a *delivery* of goods by a debtor to
his creditor, to be held until the debt or obligation is dis-
charged and then to be *redelivered* to the pledgor; the
title not being changed, during the continuance of the
pledge. (*Story on Bailment*, § 286, 2*d ed.*) Unless there
be a *delivery* of the goods, there can be no valid pledge.
The delivery must be actual and continued, except in one
or two classes of cases, where constructive delivery is tole-
rated. The reasons for the strictness of the rule in regard
to delivery are quite obvious. It is not essential to a valid
pledge that the terms of it should be in writing, and a
public record made of it, for the reason that in every valid
pledge the creditor is found in possession of the goods, and
that fact, together with the absence of possession in the
debtor, is a sufficient publication of the transaction to other

Parshall *v.* Eggart.

parties, dealing with him. (*Camp* v. *Camp*, 2 *Hill*, 628. *Bonsey* v. *Amee*, 8 *Pick.* 237. 2 *Kent's Com.* 581. *Story on Bailment*, § 297.) In this case there was not at the time of making the agreement, on the 13th of December, any manual or constructive delivery of the goods sought to be held as a pledge. The goods remaining in the very place where the owner stored and kept them, not even being viewed by the pledgee, and Roche continued to keep open the store and transact business, as he did before the pledge, there can be no pretense that there was a symbolical delivery. If he had closed up the store and handed over the keys to the plaintiffs, there would have been such a delivery. I assume, in meeting this part of the plaintiff's argument, what they claim and what the case states, the proof tended to establish, that the bran and middlings attached were, on the 13th of December, in the same place, in the storehouse, in the same bins and separated from the other property there, as the sheriff found the same when he made the levy.

Did the possession of the storehouse, gained by the plaintiffs, one hour before the levy, constitute a good delivery, as against the creditors? I think not. And here I shall assume that they got possession of the storehouse with the assent of Roche.

"The pledge of movables *without delivery* is void, as against subsequent *bona fide* purchasers, and generally as against creditors." (2 *Kent*, 581.) I think the reasons for holding that delay in filing a chattel mortgage makes it absolutely void as against creditors, though filed before judgment and execution, are applicable to a case of nondelivery of goods pledged, and refer to authorties hereinbefore cited on that point. A pledge and a mortgage are securities of a similar nature, and when applicable, the same rules should be applied, in the interest of creditors. No class of securities known to the law can be so much and so easily used in creating and keeping on foot secret

Parshall *v.* Eggart.

and fraudulent agreements, if it be tolerated that a pledgee, as against the creditors of the pledgor, can delay the taking of possession of the subject of the pledge until the same be procured by creditors with legal process. The interests of trade require that there should be an actual and continued change of possession of the goods, and such is the law.

The plaintiff's counsel urges that the receipt on its face shows that Roche received the goods from the plaintiffs, and that he has received them from the pledgees, in a new capacity, as agent and factor. So far as creditors are concerned, if this be a pledge, the writing is to them of no moment whatever; it is only, at the furthest, evidence of the pledge, which would have been just as valid if it had been left in parol. The true and only essential inquiry in this case is, has there been *in fact* a delivery; none accompanied the transaction; and this disposes of all the argument made upon the suggestion that this paper on its face amounts to a warehouse receipt; for the plaintiffs cannot, by any fiction, avoid meeting the undisputed fact that the subject of the pledge was not delivered to him until their debt matured, and after Hunter's claims as a creditor of Roche became prior and superior to theirs.

The nonsuit was properly granted, and a new trial should be denied, with costs.

[ERIE GENERAL TERM, May 4, 1868. *Daniels, Davis, Marvin* and *Barker*, Justices.]