THOMPSON v. VAN VECHTEN et al.

A chattel mortgage is extinguished by payment made, with the mortgagor's money, by one who purchased the chattel at sheriff's sale to aid the debtor in defrauding his creditors.

Though the purchaser bought on his own credit, an assignment to him of the mortgage is ineffectual to preserve its lien against subsequent existing incumbrances even for moneys paid out by him to complete the purchase and protect his title to the chattel.

A precedent debt does not qualify the mortgagee of a chattel as one in good faith, under ch. 279 of 1833, so as to entitle him to question a prior mortgage for a default in re-filing it.

A mortgage not filed, of a chattel not delivered, is void as to a creditor at large whose claim accrues while the default in filing continues, though such creditor is not in a position to raise the question until he has obtained judgment or process against the property.

The right to a preference over the unfiled mortgage attaches itself to the debt, and accompanies it when transferred by the negotiation of commercial paper.

Though a mortgagee cannot avail himself of the omission to refile unless he became such during the continuance of the default, it is otherwise of a general creditor, who may take advantage of such omission though his right accrued previous to the default.

A statement held sufficient to support a judgment by confession, that "the indebtedness arose on the sale and conveyance by the plaintiff to the defendant of his interest" in certain partnership property, though it did not show how the plaintiff was connected with the firm, or what was his interest, or, otherwise than by the words quoted, that the sum confessed was for the price of the interest sold.

Any party having a lien on a chattel may avoid for usury a mortgage claiming priority.

APPEAL from a judgment of the Superior Court of the city of New York. The plaintiff was the holder of a chattel mortgage upon the steam vessel Alida, which ordinarily ran on the Hudson river between Kingston and New York, executed by John Van Vechten, the 21st day of March, 1855, to secure the due payment, by the mortgagor, of certain promissory notes, amounting to $16,000, which had been before then made by

the firm of Mills & Thompson, of which the plaintiff was a partner, for the accommodation of the mortgagor, and which had been negotiated by him. The complaint alleged that a number of persons, who were made defendants, claimed to have liens upon the vessel by means of mortgages and executions on judgments, and suggested that a separate sale upon any one of them would be injurious to the interests of all, on account of the uncertainty which would arise respecting the title. The plaintiff therefore prayed for an injunction, for the appointment of a receiver to sell the mortgaged property, that the money might be brought into court for distribution, and that the plaintiff might be paid the amount due to him and for general relief.

The defendants answered, setting up their respective liens, and each of them alleged, among other defences against the plaintiff's mortgage, that it was given to secure an usurious loan, and was void for that reason. The answer of Elmore, a mortgagee, set up his mortgage as a counterclaim and by way of cross bill.

Among the liens stated in the pleadings were attachments in admiralty for repairs upon the vessel.

Pending the suit, a receiver was appointed, as prayed for, and the vessel was sold under the process of the district court of the United States in admiralty, with the concurrence of the receiver appointed in this action, and the net proceeds which came into the hands of the receiver, applicable to the securities claimed by the parties in this suit or some of them, was the sum of $10,840.95.

The case was tried before a justice of the Superior Court, without a jury, whose conclusions of fact were substantially as follows:

The vessel was originally owned by one Daniel Drew, who, on the 30th October, 1852, sold her to the firm of William Masten & Company, the partners of which were William Masten, Nicholas Elmendorf and Marius Schoonmaker, for $30,-000, and received from the purchasers three promissory notes for $10,000 each, payable respectively in six, twelve and

eighteen months from date, and a mortgage on the vessel, conditioned for the payment of the notes, with a provision that the purchasers might remain in possession until default. The mortgage was duly filed in the clerk's office of Ulster county, where the mortgagors resided, and was duly re-filed, with a proper statement of the amount remaining due, on the 25th October, 1853; but was not again renewed. The first two notes, were paid, but the third was unpaid. The defendant Abraham Van Vechten claimed to have the first lien upon the proceeds of the sale, as an assignee of this mortgage, as afterwards mentioned.

On the 9th day of January, 1854, Masten and Schoonmaker sold and transferred their respective interests in the vessel, to Elmendorf, he assuming the payment of the debts of Masten & Co., and agreeing to pay to Schoonmaker the advances he had made, over and above his receipts, on account of the firm.

On the 25th day of February following, Elmendorf mortgaged the vessel to the defendant Prosper P. Shaw, to secure $12,000 then borrowed by the mortgagor of the mortgagee, the former giving two notes of $6,000 each, at three months, with the privilege of renewal for three months longer. It was found that this mortgage was executed and taken in good faith, and without notice to the mortgagee of any fact which could prejudice him. The money loaned belonged to one Coe, who resided in South America, and for whom Shaw was agent. The notes were once renewed as provided for, but the renewed notes were not paid, and the whole amount of $12,000 and interest was due at the time of the trial. This mortgage was filed in the proper clerk's office in Ulster county, the 12th July, 1854, and not before, and was never re-filed.

The sheriff of Ulster county, on the 4th day of May, 1854, held several executions issued upon judgments against Elmendorf; and on that day advertised the vessel to be sold thereon, on the 17th day of July following. On the 26th June, he took a receipt from Elmendorf, P. P. Shaw and one Demeyer, who acknowledged that they had received her from him as sheriff, and agreed to deliver her to him at a place named, on the river,

in Ulster county, on demand, or to pay the amount of the judgments. They did redeliver her on the 8th July prior to the sale, and the sheriff resumed possession of her. In the meantime, Drew had assigned his mortgage to one Dunlap, who had employed one Stewart, a deputy sheriff, to conduct a foreclosure of that mortgage, and he accordingly advertised the vessel to be sold on the mortgage, on the 17th July afore-said. On said 17th July, the sheriff sold the vessel on the executions, to John Van Vechten, as the highest bidder, for $19,000. The sale was made, in terms, subject to the Drew mortgage and subject to all other legal claims. The agent of Dunlap was present, and announced that the vessel would be sold on the Drew mortgage, immediately after the sheriff's sale. Shaw was also present, and gave notice of his mortgage and of his claim under it. J. Van Vechten did not pay any thing on account of his bid, but gave his note, signed also by N. Demeyer, for the whole sum, to Griffith, the sheriff, payable on demand. Immediately after the sale, and before the parties had left the boat, on the deck of which it was made, J. Van Vechten paid to Stewart, Dunlap's agent, the amount due on the Drew mortgage, with costs and expenses, who paid over the same at once to Dunlap, the creditor, who thereupon assigned the same to John Van Vechten, the latter being advised by counsel, as it is found, that such an assignment would be for his protection and interest. The money so paid was not the money of J. Van Vechten, but was money furnished to him to make such payment, by Elmendorf. It was found that the purchase of the vessel by John Van Vechten at the sheriff's sale, was not made in good faith, but was fraudulent as against the creditors of Elmendorf. He, however, took possession pursuant to his purchase, and commenced to run the vessel between Kingston and New York, and continued to do so until the 16th November following. Elmendorf gave J. Van Vechten a bill of sale of the vessel in February, and the sheriff also executed one to him in March, 1855.

On the 29th July, 1854, J. Van Vechten executed and delivered an assignment of the Drew mortgage to Abraham

Van Vechten, on a consideration, as expressed, of $5,545. The amount of $1,795, parcel of this sum, had been loaned by Abraham to John the 18th July, and the residue, $3,750 was loaned on the day the assignment was executed. The smaller sum was applied by John to the payment of certain liens on the vessel, and the other was paid by him on account of some of the judgments and executions under which the sale had taken place. It was found that Abraham Van Vechten, in taking the assignment of the mortgage, acted in good faith, and without any notice which would prejudice his title, but that he never took any possession of the vessel; and that the several parties contesting this mortgage had notice of its existence.

The Westchester County Bank was the holder of certain promissory notes, made by Elmendorf, and indorsed by John Van Vechten and Demeyer, dated June 10, 1854, on which the bank commenced actions, and obtained two judgments for $5,195.20 each against maker and indorsers, the 16th day of March, 1855, and the next day caused executions to be issued to the sheriff of the county of New York, who immediately levied on the vessel in that county. It was claimed by some of the parties that this levy had become dormant; and the following facts bearing upon that point, were found, viz.: the sheriff did not arrest or take actual possession of the vessel, but she was allowed to make her daily passages between New York and Kingston from the time of the levy until the 15th September following, when she was seized by the United States Marshal, under the process in admiralty. Meantime, on the 15th August, the plaintiff's attorneys wrote to the sheriff, to the effect that they had given the defendant sufficient lenity, and directed him to apprise them that unless they paid promptly, the vessel would be locked up and sold. The defendant, M. Schoonmaker, became the assignee of the bank, of these two judgments, on the 15th September, 1855; but a considerable amount had been collected thereon, leaving due a balance of only $2,748.77 and interest.

Schoonmaker was also a creditor of Elmendorf upon a

judgment confessed by the latter, in his favor, on the 30th March, 1855. The confession and statement, which was duly signed and sworn to by Elmendorf, is as follows: "I, Nicholas Elmendorf, the defendant, hereby confess myself indebted to Marius Schoonmaker, plaintiff, in the sum of seventeen thousand nine hundred and thirty-one dollars, and hereby authorize the said plaintiff and his executors, administrators, attorneys, or assigns, to enter a judgment against me for that amount. The above indebtedness arose on the sale and conveyance by the plaintiff to. the defendant, of his right and interest in the boats, property and effects of William Masten & Co., in January, 1854; and I hereby state that the sum above, by me confessed, is justly due to the said Marius Schoonmaker, plaintiff, without any fraud whatever. Dated the 30th day of March, 1855." It appeared that there was indorsed upon an instrument, of January 9, 1854, by which Elmendorf undertook to repay Schoonmaker the amount of his advances for the firm and towards the purchase of its property, a statement signed by Schoonmaker and Elmendorf to the effect that these advances, over the receipts, amounted to $16,488.59; but this indorsement was without date, and it was not proved when it was executed. Execution was issued on this judgment April 12, 1855, to the sheriff of the county of New York, he having then in his hands the execution on the above mentioned judgments of the Westchester County Bank. The sheriff declined to sell the vessel without an indemnity, and none was furnished. The sheriff advertised her for sale, but she continued her trips until seized by the Marshal.

The claim of the defendant, James H. Elmore, arose as follows: He loaned John Van Vechten $1,000, on his note, on the 19th January, 1855, under an understanding with the master of the Alida that he should be paid out of her first earnings; but, payment not being made, Van Vechten, on the 15th September thereafter, executed to him a mortgage on the vessel, then under levy and advertised to be sold by the sheriff of New York, conditioned for the payment of the

amount on demand with interest. When Elmore took this mortgage, which was filed in the proper office on the same day, he had notice of the plaintiff's mortgage.

The plaintiff proved his mortgage, which was of the date and in the terms above mentioned, but it was not filed in any clerk's office. It was found to have been executed as a cover for an usurious transaction.

The note for $19,000, which John Van Vechten and N. Demeyer had given to Griffith, sheriff of Ulster county, upon the sheriff's sale of the vessel, was, prior to November 15, 1854, reduced by payments to $4,565.41, and on that day Griffith recovered judgment against the maker for that sum, and afterwards caused an execution to be issued to the coroner of Ulster county, who levied upon the vessel, but, subsequently and before the commencement of the action, abandoned the same. Griffith did not appeal here.

In the course of the trial the counsel for Elmore and Schoonmaker offered to prove that the mortgage of Shaw was given upon an usurious consideration. The evidence was excluded on objection by the counsel for Shaw, and the parties offering it excepted. The pleadings did not set up usury in this security.

The conclusions of the judge, in matter of law, were, first, that the mortgage to Drew was extinguished by having been paid off with the moneys of Elmendorf, one of the mortgagors; secondly, that the purchase of the vessel by John Van Vechten, at the sheriff's sale, was void as between him and the creditors and mortgagees of Elmendorf; but that the title which he acquired was good as against Elmendorf, and that it accrued to the benefit of any *bona fide* purchaser under him; thirdly, that M. Schoonmaker was entitled to be first paid the amount due on the judgment assigned to him by the Westchester County Bank out of the funds in the hands of the receiver; but, fourthly, that he was not entitled to be paid the amount of the judgment assigned to him on account of the insufficiency of the statement upon which it was entered; and, lastly, that the defendant, Shaw, was entitled to be next paid the amount of his mortgage out of the said funds, and

Thompson *v.* Van Vechten.

that, as such, payment would exhaust such funds, he was entitled to the whole amount thereof. Judgment accordingly.

The defendants severally excepted to the report, but it was affirmed at a general term. The plaintiffs, and the defendants, A. Van Vechten, Shaw, Elmore and Schoonmaker, severally appealed from the parts of the judgment adverse to them respectively.

*E. Moore,* for Van Vechten and Elmore.

*John E. Burrill,* for Shaw.

*M. Schoonmaker,* in person.

DENIO, Ch. J. It will be convenient to consider in the first place the claim of the defendant, Abraham Van Vechten, as the assignee of the mortgage executed by Masten, Elmendorf and Schoonmaker to Drew. That mortgage was the earliest incumbrance on the vessel, and the claimant shows a formal title to it by mesne assignments under the mortgagee. The answer relied upon is, that the debt which it has given to secure was paid off by Elmendorf, the debtor, before the assignment to the claimant. It was so paid in fact, and the question is, whether the payment was, under the circumstances, an extinguishment of the lien. The immediate assignor of the claimant was John Van Vechten. His assignee having taken the assignment in good faith, has the same right which he had, or, if he acted as the agent of Elmendorf, which Elmendorf had, and he can claim no other or better title. (*Bush* v. *Lathrop,* 22 N. Y., 535.) Immediately preceding the payment J. Van Vechten had purchased the vessel at a sheriff's sale on executions against Elmendorf, the mortgagee and owner of it; and the payment of the mortgage was actually made by the hand of J. Van Vechten to Dunlop, the creditor; and at the time of paying the money he took an assignment to himself of the mortgage, evincing, by that act, an intention to preserve the lien of the mortgage, and not to extinguish it. But this is not the whole case. The purchase at the sheriff's

sale was not *bona fide*, but was made with a view to defraud the creditors of Elmendorf, and the money which was paid to Dunlop was not that of J. Van Vechten, but was money which Elmendorf, the debtor, had furnished him to make the payment. The case is the same as though Elmendorf had paid the money himself and had procured an assignment to be made to J. Van Vechten. The purchase at the sheriff's sale was in terms subject to the Drew mortgage, the amount due on which was, in effect, a part of the sum bid as the purchase of the vessel. Hence, Elmendorf was under no obligation to pay off the mortgage for J. Van Vechten's benefit.

Again, the greater part of the money obtained by John from Abraham Van Vechten, on which the latter took the assignment of the mortgage, was applied towards the payment of the residue of the judgments under which the sheriff had sold the vessel. J. Van Vechten was in no manner liable for the balance of those judgments, and the money was, therefore, expended for the benefit of Elmendorf, and the smaller amount which was first borrowed of Abraham was applied to the payment of liens upon the vessel; but John's purchase was made subject to all legal incumbrances, and if his purchase was fictitious, the amount paid to extinguish these liens was paid for the benefit of Elmendorf. These circumstances show, beyond any reasonable doubt, that the transaction by which J. Van Vechten became invested with a formal title to the vessel, and became, at the same time, the formal assignee of the Drew mortgage, was merely colorable. Elmendorf was the real party to that transaction, and J. Van Vechten was his instrument, and the object was to cover up the property of the former and protect it from the pursuit of his creditors. It is a feature of the case that when the Drew mortgage was paid, Dunlop, the holder, was about to enforce it by a sale of the vessel. My opinion is that the transaction is to be considered precisely as though Elmendorf, continuing to be the owner of the vessel, had himself paid off a debt owing by him, for which he had pledged it, by way of mortgage, and had procured the creditor's security to be formally assigned to a third person named

by him. The title thus attempted to be preserved is now set up by Abraham Van Vechten against Shaw, a mortgagee, whose title existed at the time of the payment, but which title was subsequent in date to the Drew mortgage, and against Schoonmaker, whose title arises upon a levy on execution subsequent to the alleged extinguishment. I am of the opinion that the Drew mortgage was paid and extinguished. Elmendorf, it should be remembered, had, as between himself and the other makers of the notes, which the mortgage was given to secure, become the sole debtor. The debt was the principal subject, and the mortgage was but an incident, deriving its whole legal effect from the existence of the debt. The debt is paid, not by a party having only an interest to redeem the pledge, but by the debtor himself. Assuming, as I have done, that J. Van Vechten's purchase was fictitious, there was no person in existence who had an equitable interest in keeping the Drew mortgage on foot, after the mortgage debt had been paid; while Shaw had the strongest interest in insisting that the payment should have its natural effect of extinguishing the security. It is the bald case of a debtor whose property is subject to two successive liens, paying, out of his own means, the debt for which the earliest lien was created, and attempting to keep the security outstanding in the name of a third person, in order to resume it at his pleasure or convenience, upon a new transaction. But if we consider the purchase, at sheriff's sale, therefore, fraudulent, as not merely colorable, the difficulty of preserving the lien of the Drew mortgage will be equally great. The sale upon that supposition vested a title in J. Van Vechten, as against Elmendorf; but he had no legal or equitable right to require the latter to pay off the prior lien for his benefit, and to be subrogated to the holder of such elder lien, in order to protect him against those which were junior. His purchase was, in terms and effect, subject to the Drew mortgage and to all prior liens, and he had actual notice of Shaw's mortgage as well as that of Drew. If he had paid off the latter with his own money, it would be difficult to maintain that he could

hold it against Shaw.  But when it was paid with the money of Elmendorf, it was *ipso facto* extinguished, notwithstanding the assignment, which was executed to make it appear that it was still on foot.  The effect of the payment of a debt by the party indebted, is to extinguish the contract and release the collateral securities.  Cases may exist in which another party may be entitled, upon the same doctrine of equitable subrogation, to hold the securities for himself, but I think there is not any feature in this case, calling for the application of these doctrines.   The conclusion to which I have come does not depend upon any principle of merger.  The mortgage of Drew was extinguished, not by merger, but by payment.  There was no union, in one person, of the property in the vessel and the charge upon it, because the charge was extinguished by payment before it was, in form, assigned to the purchaser of the vessel.

The principle is well settled in the English courts of equity that if there be successive mortgages upon property, real or personal, and the debtor, or any person standing in his place, with notice of the second incumbrance, pay off the earlier one, it is extinguished as against the second incumbrance, and as against any person subsequently deriving title under the owner of the equity of redemption.   *Otter* v. *Lord Vaux* (39 Eng. Law & Eq., 611), was the case of successive mortgages of real estate, the second one being, in terms, expressly subject to the first. The first mortgagee sold the premises under a power of sale contained in his mortgage, and the mortgagor became, in effect, the purchaser, and took a conveyance to himself, and subsequently executed another mortgage of the property.  It was held that the effect of the transaction was the payment of the first mortgage, and that the second thereupon became the primary lien upon the estate.   Lord Chancellor CRANWORTH said the case was that of a mortgagee liable to pay a sum of money to his first incumbrancer, paying it and getting a transfer; " but that transfer," he said, " is something which, upon general principles, he cannot set up against those who claim as his creditors, by a title subsequent to that which he has so paid

off. He pays it off for the benefit of the inheritance, and all persons who are entitled to any portion of the inheritance under him claiming, after that which he has paid off, are entitled to the benefit of his having, to that extent, liquidated the prior demand." The cases cited by the counsel for the plaintiff in that case, one of which related to personal property, are further examples of the principle.

Abraham Van Vechten cannot claim any advantage on account of the negotiable character of the securities given to Drew on the mortgage debt. These were three promissory notes, two of which had been paid off, sometime before the sale of the vessel. The remaining one was past due when A. Van Vechten acquired his interest, which made it subject in his hands to the defence of payment. Besides, the evidence does not show that it was ever transferred to him.

The counsel for A. Van Vechten relies upon the case of *Millspaugh* v. *McBride* (7 Paige, 509), and other cases to the same effect. There were in that case two successive mortgages, and two of the defendants were the purchasers of the equity of redemption, and they purchased in and took an assignment of the first mortgage to protect their title; and it was held, on a bill to foreclose the second mortgage, that the older one was not extinguished by merger, but was to be first paid out of the proceeds of the sale on the foreclosure. This is quite consistent with my conclusion in the present case; and the distinction is, that here the first incumbrance was paid by the actual debtor, whose duty it was to pay all his debts to the creditor who was entitled to receive it. In such a case no assignment of the paid security can prevent its extinguishment. That part of the judgment of the Superior Court which pronounced against the claim of Abraham Van Vechten must, therefore, be affirmed.

The next lien in the order of time is the mortgage of $12,000, executed by Elmendorf to Prosper P. Shaw, February 25th, 1854. There is no question as to the *bona fides* of this security, and the mortgagee is entitled to be first paid, unless he has lost his advantage by an omission to comply

with the provisions of the act of 1833, requiring chattel mortgages to be filed. (Ch. 279.) It was not filed in the proper office until July 12, 1854, and was not afterwards refiled.

The first question upon this branch of the case is, whether John Van Vechten can successfully contest this lien. He made a formal purchase of the vessel at the sheriff's sale, under execution, against Elmendorf, on the 17th July in that year. That purchase, even if it were *bona fide*, would be subject to Shaw's mortgage, unless its lien were impaired by an omission to file the mortgage. A *bona fide* purchaser at sheriff's sale has, undoubtedly the same rights under that statute which the creditors whose judgments were being enforced by execution had. · It is not stated when these judgments were recovered, nor when the debts were contracted upon which they were recovered. The executions were levied on the 4th May, 1854, and the sheriff took actual possession and put the vessel in the hands of receiptors on the 26th June thereafter. Down to that time Shaw's mortgage had not been filed. The creditors had, therefore, a superior right to show, and a *bona fide* purchaser would have obtained, a title not subject to the mortgage. But J. Van Vechten's purchase is found to have been fraudulent against the creditors of Elmendorf. It is not expressly found to have been made for the use and benefit of Elmendorf, or to have been merely fictitious or in trust for him, as seems to have been the case on the former trial (6 Bos., 398), but other facts are found, which, as I have already said, show it to have been so. J. Van Vechten cannot, therefore, avail himself of the advantages which the judgment creditors had acquired. Being a trustee for Elmendorf, he stands precisely in his place, so far as this question is concerned, and the mortgage was perfectly valid against him, without filing.

It is next to be determined whether Elmore is entitled to a priority over Shaw. He loaned $1,000 to John Van Vechten, the 19th July, 1855, without any agreement at the time that he was to have a mortgage, but on the 15th September following, Van Vechten executed a mortgage on the vessel to him.

It was then under a levy by the sheriff of New York, but was being navigated between Kingston and New York, under the direction of J. Van Vechten. The act of Elmore was *bona fide*, so far as it could be, under these circumstances. But his mortgagor, J. Van Vechten, was not a *bona fide* purchaser under Elmendorf. He cannot, therefore, claim under his title, unless he was himself a *bona fide* mortgagee. But he took his mortgage for an antecedent debt, and did not part with any valuable thing as a consideration for it; and it has been settled that the term *bona fide* in the act of 1833, is to receive the same interpretation as when used in the act respecting the recording of conveyances of real estate (*Van Heusen* v. *Radcliff*, 17 N. Y., 580.) Shaw's mortgage is, therefore, a superior lien to that of Elmore, although there was a default, as to filing it, when that of Elmore was executed.

The claim of Schoonmaker, as the assignee of the judgment of the Westchester County Bank, against Elmendorf, is to be next considered. The debt upon which these judgments were recovered, was contracted on the 10th day of June, 1854, when Elmendorf became the maker of several notes, indorsed by Demeyer and Van Vechten, of which the bank became the holder, and on which it recovered judgments on the 16th March of the next year (1855); and it caused a levy to be made on the vessel the next day, by virtue of executions on those judgments; and the vessel remained subject to that levy until the following September, when the marshal's sale was made. When the debt was contracted, Shaw's mortgage was in existence, having been executed the preceding February, but it was not filed until more than a month afterwards. Furthermore, Shaw was in default for not refiling his mortgage from the 7th July, 1855, inclusive, down to the time of the marshal's sale. I am of opinion that each of those omissions have operated to give the executions the preference over the mortgage. The statute of 1833 declares that a mortgage not filed (where there is no delivery of possession) shall be absolutely void as against the creditors of the obligor. (Ch. 279, § 1.) It is argued that this embraces only creditors who

have obtained judgments and executions during the time when the omission to file existed. If this were so, the act would not, in many cases, accomplish any beneficial purpose. One proposing to part with money or property to another, under a contract to be repaid at a future time, could obtain no information for his guidance by a search at the proper office. But it was the apparent, and I think, the real object of the act, to prevent the setting up of secret mortgages against persons who might deal with the mortgagor, on the faith that his property was not thus incumbered. It is true, the mortgage cannot be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against his property; for creditors cannot interfere with the property of their debtor without process. But when they present themselves with their process, they may, I think, go back to the origin of their debt, and show, if they can, that when it was contracted, the incumbrance with which they are now confronted existed and was kept secret, by being withheld from the proper office. I observe, that it is insisted that the bank or its assignee cannot object to the default in filing the mortgage before the debt was contracted, because it is not shown that the notes were negotiated to them during that time. But I think the right to a preference over the unfiled mortgage attaches to the debt, and accompanies it when transferred to another in the course of the negotiation of commercial paper.

The statute also declares that every mortgage filed pursuant to its provisions, shall cease to be valid against the creditors of the mortgagor, or against subsequent purchasers and mortgagees, after one year from such filing, unless within thirty days preceding the expiration of the year, it shall be again filed, with a statement of the interest of the mortgagee. (§ 3.) The question is, whether a creditor must, in order to avail himself of this provision, have become such during the default in refiling. We have given a construction of this provision in its bearing upon purchasers and mortgagees, in *Meech* v. *Patchen* (14 N. Y., 71), and we held that a mortgagee could

not take advantage of an omission to refile unless he became such mortgagee during the existence of the default. This was based very much upon the word *subsequent*, which is used to qualify the term purchasers and mortgagees, and means, as we thought, subsequent to the omission to refile. But this expression is not employed as regards creditors. Reading the statute literally, the creditors who may take advantage of the default in refiling, embrace all the creditors of the mortgagor, without regard to the time when the debts were contracted. It may be said, that if the creditor, having the statutory notice that the goods of the party with whom he is about to deal are mortgaged, trusts him notwithstanding, he is not likely to be greatly prejudiced by the want of record information that the lien is still existing after the expiration of the year; and this is true. He certainly has not the same need of this information which he had of the existence of the mortgage when he first dealt with the mortgagor. Still, he may give further time of payment or omit to enforce his demand, if he finds that the lien of the mortgage is not kept up, when he would have acted differently upon learning that it was continued. The language of the statute being direct and positive, embracing all creditors, I do not think we ought to hold that the lien continued as against these executions, after the default in refiling the mortgage.

The judgment confessed by Elmendorf, in favor of Schoonmaker, was for a debt existing anterior to the execution of the mortgage to Shaw. At the time of confessing the judgment and issuing the execution, the mortgage was in existence, and had been filed, and the time had not arrived for refiling it; but while the boat was under the levy on this execution, the default in refiling occurred. If I am right in the last view taken of the judgments of the Westchester County Bank, the confessed judgment, if otherwise valid, would have a preference over the mortgage of Shaw, and would be entitled to come in next after the judgment of the bank. But I am of the opinion that it is void for the want of a sufficient statement. The statement is, that the "indebtedness *arose on the sale* and

conveyance, by the plaintiff to the defendant, of his right, title and interest in the boats, property and effects of William Mastin & Co., in January, 1854." The case which comes the nearest to sustaining this statement is *Neusbaum* v. *Keim* (24 N. Y., 325). But in that case the fact of a sale and delivery of property by the defendant was positively stated, and that the sum for which the judgment was confessed was " a balance due upon such sale. We thought that was an affirmation, to a common intent, of a dealing in meat, and that the amount was the balance of the price of the several parcels sold by the plaintiff to the defendant. The dealing was of a character which usually forms the subject of an account. It is quite different in the case before us. It is not stated in what manner the plaintiff was connected with the firm mentioned, or what interest, if any, he had in it, and it is not stated, by inference or otherwise, that the sum confessed was the price or equivalent, or any part of the price or equivalent, of the right, title and interest sold. It is said, indeed, that the indebtedness arose on the sale, but how it was connected with the sale, or in what manner it arose, on or out of it, is not mentioned. If it should be said to be inferable that Mr. Schoonmaker was a partner and sold to Elmendorf his interest as such partner, such an interest would be only the residue remaining after the debts were paid and the partnership accounts were adjusted; and a sale without such an adjustment would naturally be the subject of a special contract, upon which an indebtedness in a great variety of forms might arise. It might, indeed, be sold in gross, without a settlement, for a definite sum, subject to all contingencies, and then the price, if credit was given for it, would be a debt for which a judgment might be confessed. But this statement does not convey, even to a common intent, the idea of such a transaction. It may be added, that the evidence does not disclose such a case, but shows that the transaction was special, as such a bargain would be expected to be. By the agreement that is set forth in the evidence and referred to in the findings, the consideration for the transfer of the interest was, first, an agreement of Elmendorf to repay Schoon-

Thompson *v.* Van Vechten.

maker's advances, over and above his receipts; that is, his accounts with the firm were to be settled, and the balance be paid him; then he was to be indemnified against all the debts of the firm, and against debts incurred by him in purchasing property for the firm, and finally against his costs and expenses which he might incur in relation to the premises. There was no definite price agreed upon for the interest parted with. It is true, there was an indorsement required by the parties liquidating the amount of the advances over the results, which is dated the day before the date of the instrument, but it was not shown to have been executed at its date, and it is not referred to in the confession of judgment. This detail shows that an indebtedness may well arise on the sale of such an interest and not be the price of the subject sold. I am, therefore, inclined to the opinion that this paper does not state the facts out of which the alleged indebtedness arose, or show that the sum confessed was justly due, in the sense of the Code. There is, no doubt, considerable resemblance between it and the one in *Neusbaum* v. *Keim,* but when closely examined there appears to be a substantial and clear distinction.

The plaintiff's mortgage, being founded on an usurious consideration, was utterly void against all the other parties having liens on the property. (*Schroepple* v. *Corning,* 5 Denio, 236.) The defendant Griffith had judgment against him in the Supreme Court, and does not appeal.

On consultation, however, it appears that all the other judges have come to the conclusion that the confession of judgment in favor of Schoonmaker was valid, the statement being, it is conceived, sufficient within the cases which have been adjudged in this court. It is thought to affirm with reasonable certainty, that the amount for which the judgment was confessed, was the agreed price to be paid by the defendant for the interest of the plaintiff in the property of William Masten & Co., upon the purchase by the defendant of that interest.

The result, therefore is, that the judgment of the Superior Court must be affirmed, so far as it is appealed from by Abra-

ham Van Vechten, John Van Vechten, Elmore and the plaintiff; and that, as to the appeal of Schoonmaker, it must be reversed and modified so as to allow said Schoonmaker to take the whole proceeds of the sale, the two judgments held and owned by him exceeding the amount of these moneys. Neither of the parties are to recover costs of these appeals against any of the others.

Judgment accordingly.