## BENJAMIN A. FRASER, RESPONDENT, v. DANIEL S. GILBERT, APPELLANT.

*Chattel mortgage — when void as to creditors.*

December, 1869, B. V. Fraser executed a chattel mortgage to Harriet Marvin, which was never filed until April 1, 1874, when it was immediately withdrawn, nor was there any immediate change of possession. In the winter of 1870–1871, the property was put up in a lump and sold to the mortgagee. It still remained, as it had theretofore, in the Everett House. In the spring of 1874 the mortgage was assigned to the plaintiff, the son of the mortgagor, who allowed the property to remain, as before, in the possession of his mother, who was carrying on the house. He lived in the house with his father and mother. In the fall of 1874, he removed a portion of the furniture to another house.

In June, 1872, S. and others recovered a judgment against B. V. Fraser, for a debt incurred in September, 1869, on which they issued an execution under which the property was seized. In an action by the plaintiff against the sheriff, *held,* that the mortgage was void as against the judgment creditors, and that the plaintiff was not entitled to recover.

*Semble,* that had the plaintiff been a purchaser of the property instead of an assignee of the mortgage, he could have recovered. (Per BOCKES, J.)

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought against the defendant, a deputy sheriff, for the alleged conversion of certain furniture seized by him under an execution issued upon a judgment recovered against one Benjamin V. Fraser, the father of the plaintiff, for a debt contracted between June and September, 1869.

Plaintiff claimed to be entitled to the property by virtue of a chattel mortgage executed by Benjamin V. Fraser to Harriet Marvin, which had subsequently been assigned to him by the personal representative of Harriet Marvin by the following indorsement on the back of the mortgage: "For value received, I hereby assign the within to Benjamin A. Fraser. Mary L. Marvin, per Pike, attorney."

*Carr & Peters* and *J. R. Putnam,* for the appellant.

*P. H. Cowen,* for the respondent.

LEARNED, P. J. :

There is evidence enough to warrant a finding that the attorney who signed the transfer of the mortgage was authorized to do so by Mary L. Marvin. It was then sufficiently executed as by the representatives of the estate of Harriet Marvin. (*Hertell* v. *Bogert,* 9 Paige, 52.)

The referee finds that the chattel mortgage, executed in December, 1869, by Benjamin V. Fraser, then owner of the property, to Harriet Marvin, was never filed in the clerk's office until April 1, 1874, when it was filed and immediately withdrawn; that the mortgagor remained in possession at least for one year; and that there was no immediate change of possession.

The sale by the mortgagee in the winter of 1870–1871, and the purchase by her of the mortgaged property did not change her rights. (*Buffalo Steam Engine Works* v. *Sun Mutual Ins. Co.*, 17 N. Y., 403.) There is no evidence that the mortgagee then took possession of the property. It remained as it had been in the Everett House. Nor is there any evidence that after the death of the mortgagee in March, 1872, her representatives took possession of the property. In the spring of 1874, the transfer to the plaintiff was written upon the mortgage and was signed in the name of Mary L. Marvin by her attorney. It appears that after this transfer was made, the property still continued until the fall of 1874, in the Everett House, where the wife of the mortgagor was still carrying on the house and where the property (furniture) was still used the same as before.

The plaintiff testifies that in the spring of 1874, the mortgagor handed him the mortgage with the transfer written on it; that he went through the house to see the property was there; that he took the furniture and varnished it (the mortgagor buying and preparing the varnish); that he put the furniture in good condition and put it in the rooms of the Everett House and let his mother use it, who was then running the house; that he had always lived with his father and mother; that the Everett House was run the same as it had been for several years before, and the furniture used the same as it had been for years before.

In the fall of 1874, the plaintiff seems to have taken part of the personal property to the McNulty House; the bedding and crockery. All the bureaus, bedsteads, mattresses and carpets, were still left at the Everett House.

In June, 1872, Norman Sherman and others recovered judgment against Benjamin V. Fraser, for a debt contracted by him between June and September, 1869. On that judgment they issued execution December 12, 1874, and the defendant, as deputy sheriff, seized and sold thereunder this personal property.

It seems to me plain that Mary L. Marvin never had any other interest in the property than as mortgagee. The alleged sale to herself gave her no additional title. (*Buffalo Steam Engine Works* v. *Sun Mut.*, *ut supra; Pulver* v. *Richardson*, 3 N. Y. S. C. [T. & C.], 436.) The parties evidently treated the matter in this way and disregarded the alleged sale. The transfer to the plaintiff was on its

face a transfer of the mortgage; not a bill of sale of the property described therein. There are, therefore, no third parties who have purchased the property in good faith under a sale thereof. The plaintiff succeeds only to the rights of Harriet Marvin, the original mortgagee.

The mortgage was not accompanied by an immediate delivery; nor was it followed by an actual or continued change of possession. As it was not filed, therefore, it was absolutely void as against the creditors of Benjamin V. Fraser. (2 R. S. [m. p.], 136, § 9.)

The judgment creditors were creditors of the mortgagor when the mortgage was executed. Under the decision in *Thompson* v. *Van Vechten* (27 N. Y., 568), they have a right to go back to the origin of their debt and show that the mortgage was void as to them. This case is approved in *Parshall* v. *Eggert* (54 N. Y., 18). The plaintiff claims that the case of *Van Heusen* v. *Radcliff* (17 id., 583) is in conflict with this doctrine. That case only decides that a voluntary assignee in trust for creditors is not a purchaser, against whom a mortgage is void for want of filing. It decides nothing as to the rights of creditors.

The case of *Tiffany* v. *Warren* (37 Barb., 571), only holds that a second mortgage for a precedent debt is not a mortgage "in good faith," under the meaning of this statute. It decides nothing as to creditors by judgment and execution.

In the case of *Hale* v. *Sweet* (40 N. Y., 97), the language cited by the plaintiff was in a dissenting opinion. The decision is not in conflict with the doctrine above stated. And the same may be said of the decision in *Porter* v. *Parmley* (52 N. Y., 188), also cited by the plaintiff.

It does not affect the parties that the mortgage had become payable by its terms. "Once a mortgage it so continues for the purpose of filing." (*Ely* v. *Carnly*, 19 N. Y., 496).

We have then a case where the statute declares the mortgage to be absolutely void. When a mortgage is given and not filed, and no delivery of the property is made, and at a subsequent time the property is delivered and there is then an actual and continued change of possession; and *after* such delivery the mortgagor becomes indebted, it is not necessary to inquire whether the mortgage may not be valid as against such indebtedness. But that is not the present

case. Here no immediate delivery was made and no change of possession was had. The mortgagor continued in possession, and it does not seem that any actual change of possession was made until the fall of 1874; if then.

Under 2 Revised Statutes (m. p., 136, §§ 5, 6), also, this mortgage is presumptively fraudulent and void. It was necessary for the plaintiff to show that the mortgage was made in good faith and without intent to defraud. How far the testimony established this need not now be examined.

There are some objections taken by the defendant to the evidence which should have been allowed. As there must be a new trial on other grounds, it is unnecessary to specify them.

The plaintiff claims another title to the piano. It appears that this was levied on for taxes, and it is claimed to have been bid off by the mortgagee at a sale by the collector. But the difficulty with this claim is that the only transfer to the plaintiff was of the mortgage. If there was a purchase by the mortgagee at the collector's sale, which gave her a title other than as mortgagee, then that title was not transferred to the plaintiff by the indorsement on the mortgage. If, on the other hand, the payment by the mortgagee is to be considered as made only to protect her interest, and she is to be treated still as mortgagee of the piano, then the same objection remains, which was above stated, that the mortgage was not filed.

Judgment should be reversed and there should be a new trial, costs to abide event and reference discharged.

BOCKES, J. (dissenting).

The referee finds that the plaintiff was the owner and in possession of the property at the time it was taken by the defendant on execution against Benjamin V. Fraser. I think the evidence sufficient to sustain this finding. As regards the piano-forte, the plaintiff made title as well under the mortgage and sale of it to him by the personal representatives of the mortgagee as also under the tax sale and its subsequent transfer to him by the purchaser.

Benjamin V. Fraser was the original owner of the property. This is conceded by all parties. He mortgaged it to Mrs. Harriet Marvin, and it is found, and the evidence is abundant to sustain the finding, that the mortgage was *bona fide;* that is, it was made in

good faith to secure an honest indebtedness. There was a fore-closure of the mortgage, and the property was purchased in by Mrs. Marvin, the mortgagee. Mrs. Marvin died, and her personal repre-sentatives sold and transferred the property to the plaintiff. This makes a perfect train of title from B. V. Fraser, the original owner, to the present plaintiff, a purchaser from the personal representa-tives of the mortgagee after foreclosure. The question then is, whether the evidence will support this line of title.

In the first place it is insisted that the plaintiff is without title either in form or in fact; that there was no sale to him. It appears, however, that there was a transfer in form by an indorsement on the back of the mortgage, in which mortgage the property was par-ticularly described, transfering it to the plaintiff. The language of the transfer is as follows: "For value received, I hereby assign the within to Benjamin A. Fraser." This was sufficient in form to transfer the property; certainly it was sufficient, in the absence of all proof tending to countervail the manifest intention and purpose of the writing. But the proof shows, beyond controversy, that it was the intention of the parties to transfer the title to the plaintiff by this instrument. The evidence of such intention is unmistak-able, and, indeed, this is not disputed in fact. It was executed, it is true, in form by one of the two joint owners, but by the agent of both, from whom he had full authority to act. The parties, repre-sented by such agent, were the administrators of Mrs. Marvin, and they were also owners by gift under her will. They were, there-fore, the owners, both in their representative capacity and by bequest. They were joint owners, and held as joint owners, and each as well as both, had the right to make the transfer. The execution of the paper evidencing the transfer to the plaintiff was therefore well enough as evidence of the sale. The transfer was, in fact, author-ized by both, and was made for both. In making the sale and transfer, the agent testifies that he acted under authority from both, and intended to transfer the property from them to the plaintiff. As was said in *Campbell* v. *Birch* (60 N. Y., 218), under a some-what similar state of facts, "the real intention and legal consequences of the transaction was to transfer to the plaintiff the property embraced in the mortgage." Thus, it seems, there was a transfer of

the property to the plaintiff sufficient in form, and valid in point of intention.

But no writing was at all necessary to a valid sale. The transfer was on valid and sufficient consideration. It was enough that the transfer was by oral agreement, with consideration paid, and with delivery of the property to the vendee; and it may be here added that the transferrors or vendors do not gainsay the transaction, but in fact confirm it. The sale and transfer, to the plaintiff, was, therefore, sufficient to sustain his title, so be it, that his vendors were owners. The question, then, is, whether the title thus acquired by the plaintiff, by purchase, from the personal representatives of Mrs. Marvin, who also claimed under the bequest in her will, will be protected against the creditors of Benjamin V. Fraser, the original owner and mortgagor. The mortgage was given in good faith, and for value, and had it been immediately filed in the proper office, as required by the statute, with a view to the protection of the mortgagee, no question would have arisen to the prejudice of the mortgagee, or to the prejudice of any one claiming through or under her title and rights.

The mortgage, however, was not filed in the proper office, and for this reason it is claimed that it was void by the statute as to the creditors of the mortgagor.

The case of *Thompson* v. *Van Vechten* (27 N. Y., 568), also *Parshall* v. *Eggert* (54 id., 18, 22), and *Stewart* v. *Beale* (14 N. Y. Sup. Ct. R. [7 Hun], 405), are cited in support of this position. The decision in *Stewart* v. *Beale* was affirmed in the Court of Appeals, but is yet unreported in the New York Reports. Now, unquestionably, if the levy in this case, under the execution, against the mortgagor, had been made before the mortgagee had taken possession of the property, or had taken any steps to enforce the mortgage, the creditor would have been protected against the claim of the mortgagee. In that case the mortgage would have been deemed void as to the creditor. This is the doctrine of the cases cited in exposition of the statute. But the case in hand has these distinguishing features. The mortgagee had taken possession of the mortgaged property; had foreclosed the mortgage by public sale; had become the purchaser at such sale; had died the absolute owner in possession, and her personal representatives had again sold the

property to the plaintiff, and the latter was in possession when, after all this, the defendant made the levy here put forward as a justification for his action.

Now, admitting that the levy would have been valid in law, and conclusive against the mortgagee until the latter had asserted her right to the property by taking it into possession, or even further, in this case, until foreclosure, or even further yet, *as here,* until again sold to a third party by the purchaser at foreclosure sale, would it also be valid if made after any or all these proceedings had been taken? No case in the books yet holds the affirmative of this. If it should be so held, when will the title vest so that the creditor of the mortgagor may not follow the property with his execution, or have other proceedings to reach it or its avails? If sold by the mortgagee, may the avails of the sale be taken from him by the creditor and applied on the debt on a proceeding having that object in view? Will nothing short of the statute of limitations close the creditor's right to pursue the property or its avails, if sold? In this case, the plaintiff held the position of purchaser, and, according to the evidence, his position seems to be that of a *bona fide* purchaser. True, the transfer to him is on the mortgage, and let that stand alone unexplained, it would make him an assignee of the mortgage rather than a purchaser. But, under the explanation of the transaction, as given by the witnesses, Mr. Crane, Mr. Fraser, and others, the transaction was *a sale of the property,* and the indorsement, by way of transfer, on the mortgage was to identify the property intended to be transferred. All understood that Mrs. Marvin, at the time of her decease, held the property as her own, having become the purchaser at the foreclosure sale; and her personal representatives, who made the transfer to the plaintiff after Mrs. Marvin's decease, held the property, and claimed to hold it by absolute title. Thus holding, they made the transfer, intending it as a sale of the property, rather than a mere assignment of the mortgage. The plaintiff's right to the property was, therefore, as purchaser, and was superior to that of any creditor of the mortgagor. His right to the property was complete on its sale to him with delivery. The title to it vested in him while yet it was free from the legal claim of any creditor. Thus, in the absence of all fraud in the transfer to him, his title was perfect and absolute.

This conclusion must lead to an affirmance of the judgment, without determining the question whether the right of a *bona fide* mortgagee is not superior to that of a creditor, so soon as he asserts his right to the property by taking it into his actual possession, although he may have omitted to file his mortgage in the proper clerk's office; so be it, that the property is then free from attachment or execution levy by a creditor. Nor is it necessary here to declare the rights of Mrs. Marvin's personal representatives; as if the levy been made before the sale by them, they holding under the foreclosure sale made by Mrs. Marvin during her life, for here the property had passed from them on sale to the plaintiff. But a word as to the piano-forte. The plaintiff's title to the piano-forte may be maintained under the tax sale. It was sold for taxes, and Mrs. Marvin became the purchaser. The referee finds the value of the piano, at the time of the levy, to have been $130. The plaintiff should clearly have an affirmance of the judgment for this sum, whatever should be the conclusion as to the property specified in the mortgage, other than the piano. But I am of the opinion that the judgment is right for the sum awarded by the referee.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment reversed and new trial granted, costs to abide event; reference discharged.