(5 App. Div. 381.)

STATE TRUST CO. v. CASINO CO. et al.

AMERICAN EXCH. NAT. BANK v. CASINO CO.

(Supreme Court, Appellate Division, First Department. May 22, 1896.)

1. WAREHOUSEMEN—LIEN—MORTGAGED CHATTELS.
    A warehouseman, with whom mortgaged goods have been stored, is a creditor of the owner of the goods as to the storage charges, within Laws 1833, c. 279, § 3, which declares that a chattel mortgage shall be void as against creditors of the mortgagor after one year from the time it was filed, unless, within 30 days preceding the expiration of the year, it shall be again filed; and he, being in possession of the goods, with the right to retain them for his lien, may deny the validity of the mortgage, though he has not obtained a judgment for his claim.

2. CHATTEL MORTGAGES—FILING—CORPORATIONS.
    Laws 1895, c. 529, amends Laws 1868, c. 779, entitled "An act in relation to mortgages by railroad companies," so as to provide that "it shall not be necessary to file or refile as a chattel mortgage any mortgage creating a lien upon real and personal property which has been or shall hereafter be executed by any corporation." Held, that the act of 1895 does not extend the operation of the act of 1868 to mortgages executed by corporations other than railroad companies

3. SAME—MORTGAGE ON REAL AND PERSONAL PROPERTY.
    Under Laws 1892, c. 677 (statutory construction act), defining the term "real property" as including real estate, lands, tenements, and hereditaments, corporeal and incorporeal, and the term "personal property" as including chattels and everything except real property, a lease for a term of years is personal property, though 4 Rev. St. (8th Ed.) p. 2475, § 36, re-

lating to record of instruments, declares the term "real estate" shall be construed as coextensive in its meaning with lands, tenements, and hereditaments, and embracing all chattels real, except leases for a term not exceeding three years; and therefore a mortgage covering both a leasehold for a term of 10 years and moveable chattels is not within Laws 1895, c. 529, providing that "it shall not be necessary to file or refile as a chattel mortgage any mortgage creating a lien on real and personal property."

4. WAREHOUSEMEN—ENFORCEMENT OF LIEN—SALE OF GOODS.
　　Laws 1883, c. 421, providing that a warehouseman may, when one year's storage is due, sell the property stored at public auction, does not prevent a sale by the warehouseman at any other time, if done pursuant to agreement between the parties; but the intention of the statute is that, if no agreement is made, the warehouseman shall not sell until one year's storage is due.

Appeal from special term, New York county.

Action by the State Trust Company against the Casino Company, Franklin Bien, as receiver of the Casino Company, and Ryman Maxwell, impleaded with others, and the American Exchange National Bank against the Casino Company. From an order denying a motion to enjoin defendant Maxwell from selling certain personal property mortgaged to plaintiff, and from an order permitting the warehouseman to sell the property to satisfy his claim for storage, plaintiff appeals. Affirmed.

On the 29th of September, 1894, the Casino Company delivered to the State Trust Company, as trustee, a mortgage, as security for the payment of an issue of $125,000 of bonds of the Casino Company. The mortgage covered the ten-year lease on the land and buildings, corner of Thirty-Ninth street and Broadway, occupied partly as a theater, together with all the chattels contained in that building, comprising all the appurtenances of the theater. This mortgage was recorded as a mortgage of real estate, and filed as a mortgage of personal property, on the 9th day of October, 1894. On May 22, 1895, the Casino Company was dispossessed of the premises, and the chattels covered by the mortgage were then stored in the warehouse of the defendant Maxwell in the name of A. Curtis Bond. The mortgage was not refiled at or before the expiration of a year from the date of its original filing and record. On November 19, 1895, a receiver was appointed of the Casino Company, and sequestration proceedings were instituted by a judgment creditor, the American Exchange National Bank, and in December the receiver served on Maxwell notice of his appointment. Maxwell applied for permission to sell the goods stored with him, and out of the proceeds to pay himself the storage charges. The trust company applied for an injunction against such sale, and for the appointment of a receiver of the property covered by its mortgage, including the chattels which were then stored with Maxwell. An injunction was denied, but a receiver was appointed, but only of the leasehold interest covered by the mortgage, and not of the personal property stored with Maxwell, and the motion of Maxwell to be permitted to sell the goods, and out of the proceeds to satisfy his lien, was granted. And from these two orders these appeals are taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Moses Weinman, for appellant.
Louis Wendel, Jr., for respondent Maxwell.
A. Lyons, for respondent receiver of the Casino Company.

O'BRIEN, J.　The only question presented by the appeals is as to whether Maxwell's lien for storage charges is paramount to the lien of the mortgage; appellant's claim being that these chattels

were covered by the mortgage, and that the claim for storage was subject to the lien of the mortgage, while, on the other hand, it is claimed by the storage warehouseman that the lien of the mortgage had been lost by reason of the failure to refile the said mortgage as a chattel mortgage before the expiration of the year, as provided by law, and that, in consequence, his lien for storage was a first lien upon the stored property. In support of the former view, it is insisted that the warehouseman took the property with notice of the mortgage, and that his lien attached subject to the lien of the mortgage; and we are referred to the case of Baumann v. Post (Com. Pl.) 12 N. Y. Supp. 213, wherein it was held that:

"Where chattels covered by a mortgage duly filed are stored by the mortgagor, without the mortgagee's knowledge, with the warehouseman, after default under the mortgage, so that the mortgagee's title and right to immediate possession have become absolute, the lien of the warehouseman for storage is subordinate to the lien of the mortgage."

Here it appears that default was made under the mortgage, and the trust company was therefore at liberty, had it so elected, to proceed to enforce its security, which, however, it did not do. It is also true that at the time the goods were stored the mortgage was perfectly valid, because it had been properly filed, and the year had not then expired. Undoubtedly, during that period, while the mortgage was valid, the lien of the warehouseman was subject to the lien of the mortgage. The respondent's claim, however, is not put upon the ground of his lien being superior to that of the mortgage at the time it first attached, but that, by reason of the failure to refile within 30 days prior to the expiration of a year from the original filing, the lien of the mortgage was lost, and it became void as to existing creditors, among whom was the warehouseman. But it is insisted that, as against the warehouseman, the mortgagee lost no rights; and we are referred to the case of Meech v. Patchin, 14 N. Y. 71, which is authority for the proposition that "the omission to refile a chattel mortgage, pursuant to the third section of the act on that subject (Laws 1833, p. 402), does not render it invalid as against purchasers or mortgagees, intermediate the original filing and the omission to refile." The warehouseman, however, is neither a purchaser nor a mortgagee, but claims as a creditor; and the distinction between these classes is well pointed out in the case of Thompson v. Van Vechten, 27 N. Y. 582, wherein it is said:

"The statute also declares that every mortgage filed pursuant to its provisions shall cease to be valid against the creditors of the mortgagor, or against subsequent purchasers and mortgagees, after one year from such filing, unless, within thirty days preceding the expiration of the year, it shall be again filed, with a statement of the interest of the mortgagee. The question is whether a creditor must, in order to avail himself of this provision, have become such during the default in refiling. We have given a construction of this provision, in its bearing upon purchasers and mortgagees, in Meech v. Patchin, 14 N. Y. 71, and we held that a mortgage could not take advantage of an omission to refile, unless be became such mortgagee during the existence of the default. This was based very much upon the word 'subsequent,' which is used to qualify the term 'purchasers and mortgagees,' and means, as we thought, subsequent to the omission to refile. But this expression is not employed as regards creditors. Reading the statute literally, the creditors who may take

advantage of the default embrace all the creditors of the mortgagor, without regard to the time when the debts were contracted."

And in Porter v. Parmley, 52 N. Y. 185, it is held that failure to refile a chattel mortgage makes the same absolutely void as against creditors. While, therefore, the mortgage, as against creditors, is void, it "cannot be legally questioned," as said in Thompson v. Van Vechten, supra, "until the creditor clothes himself with a judgment and execution, or with some legal process against his property; for creditors cannot interfere with the property of their debtor without process." Where, however, as here, the warehouseman, being a creditor, as against whom the mortgage is void for failure to refile, has possession of the property, and a right to retain it for his lien, with a right to sell the same to discharge the amount thereof, he is in a very different position from a general creditor; because the latter, before he can levy on the property, or have the right to sell it, must obtain a judgment, and issue execution, or obtain some legal process against the property. We think, therefore, that, as against a chattel mortgage, a creditor in possession of the property, with a right to sell it in discharge of his debt, is in a position similar to that of a judgment creditor in respect to his right to assail or deny the validity of the mortgage.

Some doubt is suggested as to the warehouseman being a creditor, due to the fact that the record is silent as to whether the person who delivered the property to the warehouseman had or had not authority to enter into a contract for its storage. It is true the record says nothing upon this point, but the validity of the warehouseman's claim as a creditor was not questioned below; and it is not claimed, nor is there anything to show, that Bond had not such authority, and it does appear that the property, after the mortgagor was dispossessed, was delivered, and therefore presumably rightfully delivered, to the warehouseman for safekeeping; and, in the absence of any evidence to the contrary, we have a right to assume that Bond had at least implied power to safeguard and protect the property for the owner, and we should not raise the question of the warehouseman's status as a creditor, which was not assailed below, and is not raised by any party upon this appeal. Apart from this, we think the order below was right in denying the appellant's motion for an injunction, because the receiver appointed in the action of the American Exchange National Bank represents a creditor of the Casino Company, who has obtained a judgment, and, therefore, is in a position to question the validity of the mortgage. Equally right was the order directing the receiver to sell the property, and, after paying the charges of the warehouseman, to retain the proceeds; because in the disposition of the latter the appellant has no interest, and the other parties affected do not appeal.

The appellant insists, however, that the mortgage was valid, and refers us to chapter 529 of the Laws of 1895, which removes the necessity for the refiling of a mortgage by a corporation. This statute amends chapter 779 of the Laws of 1868, entitled "An act

in relation to mortgages by railroad companies." It will be noticed, upon reading this latter, as amended by the Laws of 1895, that, instead of confining it to mortgages by railroad companies, the language is changed, so as to make it read: "It shall not be necessary to file or refile as a chattel mortgage any mortgage creating a lien upon real and personal property which has been or shall hereafter be executed by any corporation." This change, it is insisted, makes the statute applicable to trust mortgages executed by corporations of every kind, and not exclusively to such mortgages as are executed by railroad companies, as was provided by the act of 1868. We incline to the construction that this statute must be confined to railroad mortgages; but, even though it were applicable to trust mortgages executed by corporations of every kind, the further provisions of the act of 1895 are that "it shall not be necessary to file or refile as a chattel mortgage any mortgage creating a lien upon real and personal property. * * *" In order, therefore, that a mortgage on chattels, included in a mortgage of real estate, shall be exempt from filing as a chattel mortgage, it must be a mortgage of real estate, and recorded as such.

Recognizing the force of this suggestion, the appellant meets it by the claim that the mortgage on the lease is one upon real property, within the meaning of the statute, and our attention is called to the following definition of the term "real estate," as used in the recording acts:

"The term 'real estate,' as used in this chapter, shall be construed as coextensive in meaning with 'lands, tenements, and hereditaments,' and as embracing all chattels real, except leases for a term not exceeding three years." 4 Rev. St. (8th Ed.) p. 2475, § 36.

Against this view, that a mortgage on a leasehold is a mortgage "creating a lien upon real property," we have the definition in Despard v. Churchill, 53 N. Y. 199, to the effect that a lease is personal property, and goes to the executor or administrator. As therein said:

"Estates for years are denominated estates in lands. * * * They are still chattels real, * * * and are not classed as real estate in the chapter of 'title to property by descent.' A judgment binds and is a charge upon them, yet they go to the personal representatives, as assets, for distribution. They vest in the executors as a part of the testator's personal estate. These leasehold estates must, for the purposes of this case, be classed as personal property."

A more conclusive definition, however, is to be found in the statutory construction act (chapter 677 of the Laws of 1892), wherein real and personal property are defined as follows:

"Sec. 3. The term 'real property' includes real estate, lands, tenements and hereditaments, corporeal and incorporeal.

"Sec. 4. The term 'personal property' includes chattels, money, things in action, and all written instruments themselves, * * * and everything, except real property, which may be the subject of ownership. The term 'chattels' includes goods and chattels."

Our conclusion on this branch is, that the statute being clear and explicit, in order that a mortgage on chattels included in one upon

real estate shall be exempt from filing as a chattel mortgage, it shall be a mortgage of real estate, and recorded as such; and where, as here, it is only upon leasehold, the mortgage was not entitled to the exemption from refiling, provided by the act of 1895 as to "any mortgage creating a lien upon real and personal property."

The remaining point urged by appellant, that, even in the absence of the mortgage, the warehouseman would not be entitled to sell the property until one year's storage had become due, we think is without force. It is true the law of 1883 (chapter 421) provides that a warehouseman may, when one year's storage is due, sell the property stored at public auction. There is nothing in this act to prevent a sale by a warehouseman at any other time, if done pursuant to an agreement made between the parties. The intention of that statute was that, if no agreement was made upon the subject, then the right of the warehouseman to sell would not accrue until one year's storage was due. Here, however, it is distinctly stated that at the time the property was stored with the warehouseman a written agreement was entered into, whereby Bond agreed to pay the warehouseman the sum of $240 a month as storage of the goods, and that, if at any time the storage charges were unpaid for six months, the goods stored might be sold, to pay the storage charges, without further notice. This statement that a special agreement was entered into by Bond, as agent of the Casino Company, and the warehouseman, is not contradicted; and, as the statute upon which the appellant rests can apply only to a case in which no time has been fixed, the contention that the warehouseman could not sell until there was due one year's storage charges falls to the ground.

We think that the orders appealed from were right, and should be affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J., and PATTERSON, J., concur.

WILLIAMS, J., concurs in result.

INGRAHAM, J. (concurring). I do not think that chapter 529, Laws 1895, applies. The statute in question amends chapter 779 of the Laws of 1868, entitled "An act in relation to mortgages executed by railroad companies." By chapter 529 of the Laws of 1895 it is provided, by section 1, that: "Section 1 of chapter 779, entitled 'an act in relation to mortgages executed by railroad companies,' is hereby amended so as to read as follows." Thus, by the amendment itself, the act is still an act in reference to mortgages executed by railroad companies. Section 1 of the act of 1868 provided that it shall not be necessary to file as a chattel mortgage any mortgage which has been, or shall hereafter be, executed by any railroad company upon the real and personal property, etc. Section 1 of the act, as amended, provides that:

"It shall not be necessary to file or refile as a chattel mortgage any mortgage creating a lien upon real and personal property which has been, or shall hereafter be, executed by any corporation, as security for the payment of bonds issued by such corporation, and which has been or shall be recorded," etc.

It will be seen that the amendment thus does away with the necessity of refiling a mortgage, as well as filing it; and the words "by any corporation" are substituted for the words "by any railroad company." The act, however, by its title, still applies only to mortgages executed by railroad companies; and when the words "by any corporation" are used in the section of the act, I think that they must be held to apply to mortgages executed by the corporations named in the title of the act, namely, railroad corporations. There would be no doubt upon this subject if the act had originally been passed in the form in which it is after the amendment of 1895; and the fact that the act of 1895 was an amendment of a former act cannot give it any different construction than would be given to it had the act been passed originally in that form. Under the original act, all mortgages executed by a railroad corporation were affected. By the act as amended, only such mortgages were affected as were executed by corporations as security for the payment of bonds issued by such corporations; thus limiting the scope of the act as originally passed.

If, however, this should not be so, I agree with Mr. Justice O'BRIEN that the mortgage in question was not a mortgage creating a lien upon real and personal property, within the meaning of the section. It seems clear, therefore, that the necessity of refiling this chattel mortgage was not affected by the act of 1895. This being so, the mortgage executed by the Casino Company to the appellant was good as between the mortgagor and the mortgagee, and those claiming under him as transferees, but is void as to creditors; not having been refiled, as provided for by the statute. If this question was solely between the appellant and the warehouseman, and no other right had intervened, it might well be said that the lien of the warehouseman, having been acquired while the mortgage was valid and in force, was subordinate to that of the mortgage, and that the warehouseman could not enforce his lien as against the mortgage, upon the principle applied in the case of Baumann v. Post (Com. Pl.) 12 N. Y. Supp. 213, and cases there cited. It is only as to the creditors of the mortgagor that the failure of the mortgagee to refile the mortgage, as required by the statute, makes the mortgage void. It is true that Maxwell claims to hold this property as a creditor of the mortgagor, but it is extremely doubtful as to whether the facts show that he is a creditor; the property having been stored in the name of one Bond, and there is no evidence in the record that Bond had any authority to bind the corporation for any personal obligation. It is quite clear, however, that Maxwell could not hold this property as such creditor, if he were shown to be one, as he has no judgment against the corporation; being, at most, a mere contract creditor. As such, he cannot question the mortgage. This was expressly held in the case of Thompson v. Van Vechten, 27 N. Y. 582. It was there held that, although the mortgage was void as to all creditors who were such at the time of the failure to refile the mortgage, as required by the statute, such creditors could not legally question the mortgage until "the creditor clothed himself with a judgment and execution, or with some legal process against his

property; for creditors cannot interfere with the property of their debtors without process." It would seem quite clear, therefore, that Maxwell, as a mere creditor of the Casino Company, could not hold this property as against the mortgagee. See, also, Stewart v. Beale, 7 Hun, 416.

It further appears, however, by the complaint, that the American Exchange National Bank was a creditor of the Casino Company, and, as such, had obtained a judgment, had issued its execution, which had been returned unsatisfied, and that in an action brought upon such judgment, to sequestrate the property of the corporation, the defendant Franklin Bien was duly appointed receiver of the corporation. This receiver stands, therefore, as representing a creditor of the Casino Company, who has obtained its judgment against the company, the execution of which has been returned unsatisfied; and he is in a position to enforce the rights of the creditors to this property, notwithstanding the mortgage. It is clear, from the record before us, that the receiver is entitled to the possession of the property, free from any lien in favor of the appellant under his mortgage, and the court, therefore, was right in denying the motion for an injunction against the defendants, based upon the validity of the lien of the plaintiff's mortgage, as against the receiver, representing the judgment creditor. The order denying the motion for an injunction was right, and must be affirmed, with $10 costs and disbursements to the respondent Maxwell.

The second appeal is from the order entered in the case of American Exch. Nat. Bank v. Casino Co., in which the receiver was appointed, and which directs the receiver to sell the property, and, after paying the charges of the warehouseman, to retain the proceeds in his hands until the further order of the court. Neither the receiver nor the judgment creditor appeal from this order, and, as the State Trust Company has no interest in the disposition of the proceeds of the property by the receiver, it is not aggrieved by this order. I think, however, that, as between the receiver, representing these judgment creditors, and the warehouseman, it is quite clear that the warehouseman is entitled to be paid his charges for storing the property. While it is not at all clear that he could recover from the Casino Company in an action at law for the amount due him, he has a warehouseman's lien upon the property stored with him for reasonable charges as warehouseman, and is entitled to be paid for his charges, as between himself and creditors. The court below was therefore right in directing the receiver to pay these charges before it took the property out of his hands to be applied to the payment of the creditors' judgment.

It follows, therefore, that the appeal from the order directing the receiver to sell the property fails, and the order should be affirmed, with $10 costs and disbursements to the respondent Maxwell.