CASE No. 1008.

WEINGES v. CASH.

1. The decree of a Circuit Court, based upon untenable conclusions, will not be disturbed if it can be sustained upon any other grounds. The practice indicated by which such grounds should be brought to the attention of this court.

2. Pending suit by W. against E., E. at the home of his sister in an adjoin-ing county, while on a visit to her, and upon the solicitation of C.'s hus-band, confessed judgment to C. for an amount less than his indebtedness, which covered a period of thirty years, E. receiving no benefit from the arrangement. Within a month a transcript of the judgment was lodged in the county where E. resided and owned real estate. Afterwards E. sold a valuable horse, but it did not appear that C. knew of such sale. *Held,* in action by W., who had obtained judgment in his suit, that C. was chargeable with no fraud in the transaction, and could enforce her judg-ment.

3. Even if the judgment had been confessed by E. to defeat a recovery by W., this notice would not affect C. unless she had participated in such fraudulent intent.
4. A confession of judgment entered without action in the clerk's office during vacation, is valid; the twenty-first section of the act of November, 1873, amending the code, does not affect judgments by confession, but relates to Section 269, subdivision 1, of the code.
5. There is now no law which requires a confession of judgment to be obtained or read in open court.
6. A confession of judgment for an amount less than what is actually due, contains a sufficient statement in the words following: "The said judgment arises from the fact that I am indebted to her on account of the purchase and rentals by me of lands to which she was entitled to an interest, as one of the heirs of her father's estate, and also to the interest of her mother therein, which she has transferred to the plaintiff and directed me to pay to her, the same not exceeding the amount aforesaid, and the said amount is now justly due to the plaintiff."
7. Slight discrepancies and minor deficiencies and irregularities of form in the transcript of a judgment, may be amended, and do not render the transcript invalid.

Before KERSHAW, J., Kershaw, February, 1880.

This case is fully stated in the Circuit decree, which is as follows:

This action was tried before me as an equitable action, without a jury, upon the pleadings, evidence and arguments of counsel.

On December 9th, 1878, the plaintiff commenced an action for damages against Robert G. Ellerbe, the defendant, for an assault and battery, in the Court of Common Pleas for Kershaw county; and at September Term of said court, in the year 1879, obtained a verdict therein for the sum of $2000, for which sum, together with $63.05, the costs and disbursements of said plaintiff in said action, judgment was duly entered and execution was duly signed and lodged in the office of John Doby, sheriff of said county, in October, 1879. A notice of appeal was served in said action September 10th, 1879, but afterward was abandoned. During the pendency of said action—in January, 1879—Robert G. Ellerbe, the defendant, who resides in Kershaw county, visited his sister, Allan E. Cash, the defendant, and his mother, Mrs. E. M. Ellerbe, who was then residing with E. B. C. Cash, the husband of Allan E. Cash, who, with her husband, resided in Ches-

terfield county. While there the said Robert G. Ellerbe was pressed by the said E. B. C. Cash to secure certain indebtedness, which, it was alleged by him, existed from said Robert G. Ellerbe to his sister, Mrs. Allan E. Cash, and his mother, Mrs. E. M. Ellerbe, arising from the use and possession of certain lands in Kershaw and part of Sumter counties, which, it was alleged, belonged to the heirs-at-law of William Ellerbe, deceased, the husband of Mrs. E. M. Ellerbe, and the father of Robert G. Ellerbe and Mrs. Allan E. Cash, and also of one William C. S. Ellerbe and one Napoleon Ellerbe, the latter named of which left home twenty years ago and has not been heard from since. Upon this land Mrs. E. M. Ellerbe resided with her family until about 1848 or 1849, when Mrs. Cash and William C. S. Ellerbe married and left the family homestead, Robert G. Ellerbe then being about eighteen years of age. He continued to reside there with his mother until some five or six years ago, when his mother left. It appears that Mrs. E. M. Ellerbe has been physically too infirm, for twenty years past, to attend to her own affairs. Robert G. Ellerbe testified that in the year 1868 he purchased his mother's interest in the land for $2000, which was less than its value, but never paid her anything for it. There was no deed of conveyance put in evidence conveying said interest to him, though a paper having the appearance of a deed was attempted to be proven by defendant's counsel without calling the subscribing witnesses, one of whom was said to be in Charleston, but, upon the objection of plaintiff's counsel, the paper was withdrawn. Robert G. Ellerbe also testified that he had bargained at one time for Mrs. Allan E. Cash's interest in the land, but it was never carried into effect. It appears also that from 1848 Robert G. Ellerbe managed and controlled the plantation, conducting said lands without interference from his mother, though she continued to live there as before, kept a carriage of her own for part of the time, and always got what she wanted. The cotton continued to be branded in the old brand previously used on the place, but of late years another brand (R. C. E.) has been used in connection with it to distinguish classes of cotton. No demand for rent appears to have ever been made by any of the parties, and none ever paid until 1878, when a payment was

made on account of Mrs. Cash, and another in 1879, which collectively amounted to $500. Six years ago Robert G. Ellerbe told Samuel Young that he owed the other heirs of his father more than he was worth (in effect); but since his controversy with Weinges arose he has boasted that he owed no one anything, always paid his debts, and had over $1000 on hand that he had no use for. When Col. E. B. C. Cash pressed R. G. Ellerbe to secure his mother and Mrs. Cash, he assigned as his reason for doing so the probability of a recovery by the plaintiff of a heavy judgment in the case then pending. Robert G. Ellerbe did not deny his liability, but was reluctant to comply with the demand, because he did not believe Weinges would recover against him, or, perhaps, would not press his suit to judgment. He finally yielded, or, as he says, was "forced to do so by Col. Cash." A calculation was then made, computing the rent supposed to be due to Mrs. E. M. Ellerbe and Mrs. Cash, with interest. This was rather an estimate (as Col. Cash testified) than an exact calculation, and it amounted to over $20,000. They estimated that this sum was unnecessarily large, and that a less sum would suffice to cover all the property of Robert G. Ellerbe. They therefore settled the amount to be secured at $15,000. In these transactions Col. Cash does not appear to have consulted with Mrs. Ellerbe or Mrs. Cash, but as he said he deemed it his duty so to act for them. Having fixed upon the amount, Col. Cash and Robert G. Ellerbe proceeded to Cheraw and consulted W. L. T. Prince, Esq., an attorney-at-law, on the subject under their consideration, the result of which was that a statement was drawn up and signed by Robert G. Ellerbe for the purpose of creating the entry of a confession of judgment without action, in the manner provided in the Code Procedure, Chapter III. of Title 12. This statement was in words following:

"The State of South Carolina, county of Chesterfield, Court of Common Pleas. Allan E. Cash v. Robert G. Ellerbe. I hereby confess myself to be indebted to Allan E. Cash, the plaintiff, in the sum of fifteen thousand dollars, and consent to and authorize the entry of judgment therefor. The said judgment

arises from the fact that I am indebted to her on account of the purchase and rental by me of lands to which she was entitled to an interest as an *heir* of her father's estate, and also to the interest of her mother therein, which she has transferred to the plaintiff and directed me to pay to her, the same not exceeding the amount aforesaid, and the said amount is now justly due to the plaintiff.

(Signed) "R. G. ELLERBE."

At the foot of this statement R. G. Ellerbe made an affidavit thereto appended in writing, sworn before a notary public, wherein he swore "that the above statement is true; that he justly owes the plaintiff the amount stated above, on account of the facts stated." To this is appended the date, "27th January, 1879." The paper containing the statement and affidavit is endorsed: "Allan E. Cash *v.* Robert G. Ellerbe. Prince, plaintiff's attorney. Confession. South Carolina, Chesterfield county. Roll 844. On filing the within statement and confession, it is adjudged by the court that the plaintiff do recover against the defendant the sum of fifteen thousand dollars, with five dollars costs and fifteen dollars disbursements, making the sum of fifteen thousand and twenty-five dollars. 28th January, 1879. (Signed) Thomas F. Malloy, clerk. Filed 28th Jan'y, 1879. Thomas F. Malloy, clerk. Judgment signed and entered 28th January, 1879. (Signed) Thomas F. Malloy, clerk." The same day the papers were signed in Cheraw, but after their execution by R. G. Ellerbe, and after he and Col. Cash had returned to the home of the latter, in pursuance of the advice of Mr. Prince, Col. Cash drew up and Mrs. Ellerbe signed a paper in the following words: "Cash's Depot, S. C., Jan'y 27th, 1879. I hereby assign and transfer to my daughter, Allan E. Cash, all my claims against my son, Robert G. Ellerbe." Below this writing there is a blank, occupying nearly one-half of the page, at the bottom of which is written "E. M. Ellerbe," in the handwriting of Mrs. Ellerbe, but in different ink from that used in the writing and signature above. There is no explanation of this last or lower signature of Mrs. Ellerbe. On February 14th, 1879, a transcript of judgment (as it was entitled) was filed in the office of

the clerk of the court of Kershaw county, purported to be founded on the above confession. It is written on the usual printed blank, and contains a mere abstract, as follows: "By confession. Names of parties against whom judgment has been obtained— Robert G. Ellerbe. Names of parties in whose favor judgment has been drawn—Allan E. Cash. Amount debt—$15,000. Costs and disbursements—$20.25. Filed 28th January, 1879. Attorney's name—W. L. T. Prince." Below appears the certificate of Thomas F. Malloy, and under seal of his office, in the following words: "State of South Carolina, county of Chesterfield, Court of Common Pleas, clerk's office, 6th January, 1879. I certify the foregoing is a correct transcript of the final judgment on file in my office." On August 30th, 1879, a similar transcript, certified in like manner, was filed in the office of the clerk of court for Sumter county, with some slight differences, which will be noted. The words "by confession," are omitted from the latter—the amount of costs and disbursements is not filled upon the face of the latter, but is stated on the back, "costs and disbursements, $25." The certificate of the clerk to the latter transcript bears date August 28th, 1879. Executions were signed by the respective clerks of Sumter and Kershaw counties, based upon the aforesaid transcripts; and after the recovery of judgment by the plaintiff against Robert G. Ellerbe, as hereinbefore stated, John Doby, the sheriff of Kershaw county, with whom an execution had been lodged for that purpose, proceeded to levy upon all the property of said Robert G. Ellerbe in the county of Kershaw, and advertised the same for sale in satisfaction of the judgment of the said Allan E. Cash. Whereupon the plaintiff commenced this action to prevent said sale by a restraining order, alleging that the said confession of judgment is fraudulent and void as against the plaintiff. That no *bona fide* indebtedness existed from R. G. Ellerbe to Mrs. Cash or his mother. That its purpose was to defeat the recovery of the plaintiff and to hinder the enforcement of his judgment. That the said confession is irregular, insufficient in form, without authority of law, and, therefore, void; and that the said transcripts are irregular and not sufficient to authorize the issue of executions thereupon. All these contentions are denied by the

D

defendants, Allan E. Cash and Robert G. Ellerbe. The affirmation of all these issues is upon the plaintiff, and I am to determine whether he has made good his allegations and charges.

The first point I shall consider is that which involves the question whether the proofs warrant me in concluding that Robert G. Ellerbe was not indebted at all to his mother and Mrs. Cash.

It has not been denied that the property, whose use was the basis of the alleged indebtedness, was in 1848 owned in common by the heirs-at-law of Dr. William C. Ellerbe, who were his widow and children above specially named.

Robert G. Ellerbe, one of the tenants in common, appears to have controlled the profits of the estate from 1848 or 1849. It is familiar law, that in all such cases " when one party receives all the profits he is bound to account to the other parties in interest for their respective shares, deducting the proper charges and expenses, whether he acts expressly by their authority as bailiff, or only by implication as manager, without direct *jure domini* over the property." 1 *Story's Eq.* 466. Our cases confine the liability to the rent of such lands as were capable of producing rents at the time the occupying tenant went into possession. *Hancock* v. *Day, McM. Eq.* \*69 ; *Thompson* v. *Bostick, Id.* \*75.

The proof is that there were thirteen hundred acres of land, of which about one hundred acres were woodland, some of the rest in old fields and briars, but the most of it arable ; and that up to 1865 there was a body of slaves on the place. That the place was cultivated by Mrs. Ellerbe before 1848, and there is no proof that any of the land was brought into cultivation for the first time by R. G. Ellerbe.

I cannot, therefore, conclude that there was no foundation for the indebtedness claimed upon the proofs made. A liability results from the facts, and there is no affirmatory evidence to the contrary. It is urged, however, that the amount claimed is excessive. The proof is that arable lands are generally worth $3 per acre rent per annum, and there is no evidence to the contrary. Upon the data provided me in the case, I cannot assume that the amount is excessive. True, in a hostile proceeding Mrs.

Cash would not have been allowed interest after the lapse of so great a period of time; but if R. G. Ellerbe acted in good faith and chose to allow it, he had a right to do so. Moreover, as the parties made up the account with interest, it amounted to over $20,000, and they reduced it to $15,000. It is further contended that the statute of limitations should be applied to this claim, and therefore that the account should be stopped within the statutory period, *i. e.*, six years. No one is bound to plead the statute of limitations, and if the debtor failed to do so, no one else can complain. To hold otherwise would enable any creditor affected by the failure of his debtor to plead the statute in a suit by any other creditor to intervene and compel such pleas, or to set aside a judgment obtained on a demand to which the statute might have been pleaded. There is no such case. It is a plea personal to the debtor, and the only instance in which third parties are allowed to avail themselves of the plea, when the debtor has failed to do so, is that of a legatee or devisee, or heir-at-law, sought to be charged with a debt of the ancestor or devisor barred by the statute, or in other cases of trust, or in cases of fraud and collusion. I do not, therefore, consider this a valid objection. If R. G. Ellerbe was ever liable for the claim, he was not bound to shelter himself behind the statute of limitations.

It is urged, also, that the judgment confessed by R. G. Ellerbe to Mrs. Allan E. Cash is for an excessive amount, in so far as it includes the claim of Mrs. E. M. Ellerbe. Upon this point I conclude that the assignment to Mrs. Cash, made by Mrs. Ellerbe the same day, together with the other circumstances in proof, authorize the conclusion that she affirmed the transaction, and even confirmed the statement of R. G. Ellerbe in the writing that she had directed him to pay her share of the claim to Mrs. Cash. The judgment was not entered until the day after the assignment, and Col. Cash said in his testimony that it was all one transaction. The judgment, therefore, was unobjectionable on that ground.

I come now to consider whether the confession of judgment, impressed with the characteristics derived from the foregoing conclusions, is nevertheless fraudulent and void in law as against

this plaintiff. If it was given for a *bona fide* debt, it could only be fraudulent in consequence of some covinous agreement or secret trust between the parties to it, whereby Robert G. Ellerbe was to obtain some personal advantage to himself out of the arrangement at the expense of the rights of the plaintiff herein as a creditor. A debtor has a right to prefer any one of his creditors to all the rest, either by sale, mortgage or judgment; such a preference may have been a fraud under the bankrupt law, if made within the period of inhibition imposed by that law, but that cannot avail anything here. The case of *Cureton* v. *Doby*, 10 *Rich. Eq.* 411, I think will be found fully to answer the objections urged here against the judgment of Mrs. Cash on the ground of fraud. Doby, the defendant therein, hearing of his debtor Price's pecuniary embarrassments, and influenced as much by his solicitude for the welfare of the family of Price, who was nearly related to him by marriage, as to secure the payment of his debt, instructed his attorney to procure a confession of judgment from Price, and if his property was brought to sale to bid in the property and settle it upon his (Price's) wife and child. Price knew of these instructions, and says he therefore the more cheerfully confessed the judgment. The judgment was assailed by a creditor for fraud, but was sustained by the entire court, consisting of Judges Dunkin, Johnston and Wardlaw. I transcribe here, as applicable to the case, a portion of the judgment of the court: " Certainly a judgment may be fraudulent, though the amount for which it is confessed be *bona fide* due. This principle is recognized in *Bird* v. *Aitken, Rice's Eq.* 73, as where one renders assistance to a debtor to enable him to defraud his other creditors, that is a fraud upon the part of him who assists. The *bona fides* of his own debt will not sanctify the transaction ; and *Pickett* v. *Pickett*, 2 *Hill's Ch.* 470, is cited as a striking illustration in which a *bona fide* purchaser assisted an absconding debtor in eloigning his property. But in the same case of Bird *v.* Aitken it was authoritatively adjudged that the mere fact of securing a preference of his own debt by a confession of judgment, does not constitute an unlawful or fraudulent hindrance as to the unpreferred creditors. It cannot be doubted, says Chancellor Harper, that the mere preference of one creditor

to another cannot impeach the transaction; and if there were
nothing else in this case than that, Aitken had given a voluntary
preference by confessing the judgment, that could not be im-
peached, though he might have foreseen that the effect would be
to defeat other creditors. That would not be a fraudulent but a
lawful purpose. There is no fraud either in the debtor or in
the preferred creditor." The Court of Appeals affirmed the
doctrine, and furthermore held that there was nothing in the case
to invalidate the transaction. While the law thus allows a debtor
to give a preference among his creditors, it will not allow him to
secure an advantage to himself at the expense of creditors as the
price of such preference. That in every case the inquiry should
be as to the rights of the creditors, and in pressing those rights
care should be taken that an act of spontaneous kindness and
indulgence on the part of the creditor be not confounded with
fraud in the debtor. The best of feelings should not be chilled
and stifled by an overweening tendency to detect collusion.
" My own experience," said the late wise and venerable presi-
dent of this court, in *Maples* v. *Maples, Rice's Eq.* 300, " my
own experience is that a great deal of fraud is committed in car-
rying out the rules which have been prescribed for its preven-
tion."

The badges of fraud urged here are—

1. That the judgment was confessed and entered in another
county than that where the defendant, R. G. Ellerbe, resided
and where plaintiff's case was pending. The purpose of secresy
that is sought to be assumed from this fact is rebutted by the
circumstance that R. G. Ellerbe was on a visit to Mrs. Cash at
the time; that it was reluctantly given by him upon the urgency
of Col. Cash, and that within a month a transcript was entered
in Kershaw county.

2. The fact that it was made to his mother and sister.

This is one of the badges of fraud in the Weinges case, but the
authority cited above sufficiently shows that here it is not re-
garded as significant of fraud in itself.

3. That it was not properly enforced against R. G. Ellerbe,
and he was allowed to sell some of his property in the meantime.
The proof is that he sold one of his race-horses after the judg-

ment was given, but it did not appear that Mrs. Cash knew of it. In South Carolina, indulgence after judgment is not a badge of fraud. *Adair* v. *McDaniel*, 1 *Bail.* 158.

4. That it was taken not for the precise amount, but for sufficient to cover the property of the debtor.

The proof shows that the judgment was entered for less than the amount admitted to be due by the debtor. Had it been for a greater amount it would have been very strong evidence of fraud, but not otherwise. I conclude, therefore, that plaintiff has not established the fraudulency of the judgment of Mrs. Cash.

The next point I shall consider is, as to the sufficiency of the statement upon which the confession was entered. By the second subdivision of Section 400 of the code of procedure, such a statement " must state concisely the facts out of which it (the debt) arose, and must show how the sum confessed therefor is justly due." It must not only state that the money is due, but " the facts out of which it arose." It must also " show that the sum confessed is justly due." In other words, the consideration of the debt must be stated in such manner as to furnish within itself the means of determining that it is *justly* due. In the language of the court in *Chappel* v. *Chappel*, 12 *N. Y.* 215, " the statute looks not to the evidence of the demand, but to the facts in which it originated"—in other words, " to the consideration which sustains the premises." This rule has been followed in New York in all cases decided since *Purdy* v. *Upton*, 10 *How. Pr.* 494; *Bowden* v. *Johnson*, 11 *How. Pr.* 503; *Von Beck* v. *Shuman*, 13 *How. Pr.* 472; *Kendall* v. *Hodgins*, 7 *Abb.* 309; *Dunham* v. *Waterman*, 17 *N. Y.* 9; *Winebrenner* v. *Edgerton*, 17 *How. Pr.* 363; *Claflin* v. *Sanger*, 17 *How. Pr.* 574; *Mc-Dowell* v. *Daniels*, 38 *Barb.* 143; *Curtis* v. *Corbitt*, 25 *How. Pr.* 58; 12 *Abb.* 403. In these cases it was held that a statement, with particularity of a promissory note, was not sufficient. The statement of a note for $400 and interest and protest fees (giving the date) discounted by the plaintiffs and now owned by them, held insufficient.

So, a statement of liability as endorser of a note stated with particularity. So, of a note particularly stated, with the addi-

tion " that said note was given for money had and received by me of the said plaintiff at my request." So, for goods sold and delivered and upon an accounting had, " on the day when the confession was made." So, that the indebtedness was for " goods and groceries, and for one horse and cow, the payment of which, $300, is now due to the plaintiff." So, for lumber and building materials furnished by the plaintiff to the defendant. So, " for beer sold and delivered and money paid, laid out and expended." So, " for money lent to the defendant to pay off his debts," &c. So, " for money lent to and advanced at various times from December 1st, 1853 to date." So, when the statement was made of various sums or items of money lent or paid, with sufficient particularity as to time and amounts, but without distinguishing between sums lent and sums paid, nor showing to whom paid for use of defendant, was held insufficient in McDowell *v.* Daniels. There are many other decisions to the like effect, but these are sufficient to show that the statement in this case would not be held sufficient in New York.

The principle is that the statement must be made with such particularity as to furnish on its face the means of testing its accuracy and good faith. The statement here is that the defendant was indebted to Allan E. Cash " on account of the purchase and rental by me (the defendant in the judgment) of lands to which she was entitled to an interest as an heir-at-law of her father's estate, and also to the interest of her mother therein, which she has transferred to the plaintiff," &c.

This does not come up to the requirements of the law, and fails to furnish the means of testing its accuracy and good faith. It does not show how much of the amount was for purchase money and how much for rent. It does not show of what lands the statement is made, nor what the interest of Mrs. Cash and her mother was in such lands; nor does it name the party of whom Mrs. Cash is the heir; nor how much of the amount was due for her share, and how much for her mother's share; nor whether the rents were due upon a contract or for use and occupation; and it is entirely silent as to time. It is fatally defective in form and substance, and the judgment entered thereon is

utterly void as against the other creditors of Robert G. Ellerbe, though it may stand as between the parties.

The only remaining question is as to the validity of the transcripts. They are in the form generally in use in this state, and substantially indicate the judgment. The minor deficiencies and irregularities of form pointed out, like those of the judgment itself, might be amended. I should not incline to pronounce them void if they rested upon a sufficient original judgment. The case in 10 *S. C.* 278, in my opinion, does not conflict with these views. There is a prayer in the complaint for the appointment of a receiver. The case made does not support such an appointment.

It is adjudged that the defendant, Allan E. Cash, and her agents, be perpetually enjoined from collecting or enforcing the judgment obtained by her by confession from the defendant, Robert G. Ellerbe, until the demands of the plaintiff, Conrad M. Weinges, the plaintiff herein, including the costs of this case, be fully paid and satisfied. And the said judgment is hereby declared void and of no effect as against the said Weinges and all other existing judgment creditors of said Robert G. Ellerbe. It is further adjudged that the plaintiff recover of the defendant, Robert G. Ellerbe, $———, costs and disbursements of this action.

From this decree both plaintiff and defendants gave notice of appeal, upon exceptions which are substantially stated in the opinion of this court. But, as stated in the opinion, the defendants were properly the only appellants, the judgment being in favor of the plaintiff.

*Messrs. W. Z. Leitner* and *R. C. Watts,* for appellants.

*Mr. W. L. De Pass,* contra.

March 23d, 1881. The opinion of the court was delivered by

MCIVER, A. J. The object of this action, which was brought by a junior judgment creditor of the defendant Ellerbe, was to set aside a judgment confessed by said Ellerbe to his co-defend-

ant, Mrs. Cash. The judgment was originally entered in Chesterfield county, and transcripts thereof were docketed in the counties of Kershaw and Sumter.

The grounds relied upon were: 1. Fraud in the original judgment. 2. That the "statement" accompanying the confession was insufficient to render the judgment valid as against the rights of other creditors. 3. That the transcripts docketed in the counties of Kershaw and Sumter were invalid. 4. That the provisions of the code authorizing a confession of judgment without action, have been repealed. 5. That if these provisions have not been repealed, yet the confession of judgment in question here was of no effect, "because it had not been obtained or read in open court, as required by law."

The Circuit judge held that the plaintiff had failed to establish any fraud in the judgment in question, but that the "statement" upon which it was entered was not sufficient, and, therefore, while the judgment was good between the parties it was void as to the other creditors of Ellerbe. He also held that while there were "minor deficiencies and irregularities of form" in the transcripts, they might be amended, but that he "should not incline to pronounce them void if they rested upon a sufficient original judgment." He therefore adjudged that the plaintiff in the judgment, Mrs. Cash, be perpetually enjoined from enforcing said judgment until the judgment obtained by Weinges, the plaintiff in this case, against Ellerbe, is fully satisfied. From the judgment below both parties have appealed, though the notice of appeal on the part of the plaintiff ought, properly, to have been a notice that if this court should find itself unable to sustain the judgment below on the ground upon which it is rested by the Circuit judge, then plaintiff would insist that said judgment should be sustained on the grounds mentioned in his notice of appeal. For the *judgment* below being in favor of the plaintiff, it was scarcely his intention to appeal from it, and we will, therefore, assume, for his benefit, that the only object of his notice of appeal was to enable him to discuss the points made in his notice of appeal. The first point which he makes is, that the Circuit judge erred in holding "that the facts and circumstances proven did not establish a legal fraud upon the rights of

the plaintiff." This question has been so fully and satisfactorily disposed of in the decree below, that we deem it scarcely necessary to add anything to what is there said. Indeed, we do not understand that, in the argument here, the plaintiff's counsel impute fraud of any kind to any one except Ellerbe, and as to him only legal or constructive fraud, which is inferred from his acts and declarations, evincing, as argued, an intent to hinder, defeat and delay Weinges in the collection of any amount he might recover in the suit for damages then pending. Even were this the correct inference to be drawn from the testimony, we do not see how it could affect Mrs. Cash. There is no pretence whatever that she participated in any such fraudulent intent, (if any such there was) and, as is said in *Smith & Gibson* v. *Pate & Stubbs,* 3 *S. C.* 208 : " It would be inconsistent with every principle of law and morals" to say that she, against whom no imputation of fraud is made, should in any way be affected by the fraudulent motive which, it is alleged, influenced Ellerbe, even if such allegation had been proved. Mrs. Cash's husband, acting as her agent in the whole transaction, does not seem to have done anything more than he had a perfect right, both in law and morals, to do for the purpose of securing a debt due to his wife; for there is no evidence to show that the preference which he obtained for her was secured by any promise or understanding that Ellerbe was to receive any benefit from the arrangement. We are unable to see how this point can be sustained, and, on the contrary, concur fully with the Circuit judge in his conclusion as to the question of fraud.

The second point made by the plaintiff's notice of appeal is: " Because his Honor failed to decide that a confession of judgment taken before the clerk of the court is void at law." The question here raised was not considered by the Circuit judge, doubtless, for the very good reason that, under the view which he took of the case, it was altogether unnecessary to do so. But under the view which we take it will be necessary for us to determine the question. The rule in this court is, that while a Circuit judgment will not be reversed or set aside, except upon grounds taken in the court below, or except upon such questions of jurisdiction as may be raised at any stage of the proceedings,

yet if the judgment below can be sustained upon *any* ground, whether taken in the court below or not, this court will not only consider it, but base a judgment of affirmance upon it.   And, as will be hereinafter seen, we do not think the judgment below can be sustained upon the ground upon which the Circuit judge places it, and, as it could be sustained if the position taken by the plaintiff's second ground of appeal be well founded, it becomes necessary for us to consider the question there raised.   The determination of this question depends entirely upon whether Sections 399 to 401, inclusive, of the code, relating to confessions of judgment without action, have been repealed by the twenty-first section of the act of November 25th, 1873.   15 *Stat.* 495. It is perhaps proper to state here that the repealing act relied upon has been spoken of throughout the argument as the act of March 8th, 1875.   15 *Stat.* 868.   But in the case of *Arnold* v. *McKellar*, 9 *S. C.* 335, it was determined that there was no ground for the doubts which had been previously entertained as to whether the act approved November 25th, 1873, was a valid law, and hence the subsequent act, *in totidem verbis,* approved March 8th, 1875, was altogether unnecessary, and the true date at which these numerous and important amendments to the code took effect was November 25th, 1873, and not March 8th, 1875. We proceed then to inquire whether the sections of the code providing for the taking of confessions of judgment have been repealed by the twenty-first section of the act of 1873.   It is very manifest that they are not expressly repealed, and if repealed at all, it must be by implication.   Repeals by implication are not favored, and " to repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand together or be consistently reconciled."   *Potter's Dwar. on Stat.* 155, note 4, and the cases there cited.   The title of the act of 1873 is " An act to alter and amend the code of procedure, being Title V., Part III., of the general statutes."   In the first section it provides " that the code of procedure   *   *   *   be and the same is hereby amended in the several sections thereof as is hereinafter provided," and it then proceeds to provide for amendments to various sections of the code, specifying them by their numbers, though it does not refer

to any of the sections of that chapter of the code which relates to confessions of judgment. But the twenty-first section of the act containing general provisions and not referring to any particular section of the code, is what is relied upon as repealing the provisions of the code relating to confessions of judgment. That section is in the following words: "That after the passage of this act no judgment shall be obtained in the Court of Common Pleas except during term time in open court, and it shall be the duty of the clerk to place all cases filed in his office, in which there is no defence, upon a docket to be prepared by him for the purpose, to be known as Docket No. 6, and they shall be called on the first day of the term, and the order for judgment shall be endorsed on the complaint and signed by the presiding judge, and no execution shall be signed on judgments obtained by default in any other manner than is herein provided." Is there such a positive repugnancy between the provisions of this section and those sections of the code providing for the taking of a confession of judgment without action, as that the two cannot stand together or be consistently reconciled? We confess that we are unable to discover any such repugnancy. They manifestly relate to different things. The sections of the code, from 399 to 401, inclusive, in terms, relate to confessions of judgment *without action,* while the twenty-first section of the act of 1873 as clearly relates to judgments to be recovered *in actions* brought in the Court of Common Pleas. It speaks of judgments "obtained in the Court of Common Pleas," and requires the clerk to place " *all cases filed in his office in which there is no defence* " on a certain docket, showing clearly that it relates to cases *or actions brought* in the Court of Common Pleas in which a defence might be interposed, all of which would be altogether inapplicable to a confession of judgment *without action.* Again, it provides that the order for judgment " *shall be endorsed on the complaint,*" which is entirely inconsistent with the idea that there was any intention to refer to confessions of judgment in this section, for in such a proceeding there is no complaint. Finally, it provides, not as argued here, that no execution shall be signed on judgments obtained in any other manner than is provided for in that section, but the language is, "no execution shall be signed on

judgments *obtained by default* in any other manner than is herein provided." This shows very clearly that the prohibition does not extend to judgments by confession, for, to speak of them as judgments "*obtained by default*," would be a contradiction in terms—the very term "default" involving, necessarily, the idea that the person to whom it is imputed once had an opportunity to defend the action which he has lost by his neglect to do so in the proper way and at the proper time, and this is manifestly inconsistent with the idea of a confession of judgment *without action*. The provisions of Section 21 of the act of 1873, in our judgment, relate to Subdivision 1 of Section 269 of the code, and have no application to those sections of the code providing for confessions of judgment without action. The second point made by plaintiff cannot be sustained.

As to the plaintiff's third point, it is quite sufficient to say that we are aware of no law which requires a confession of judgment to be obtained or read in open court. The act of 1821, which did require such confessions to be read in open court, has been repealed by *Gen. Stat.* 819, and even under that act it was held that a failure to comply with that requirement did not affect the validity of the judgment or the lien which it secured. *Stokes v. Cane*, 6 *Rich.* 513.

We come now to consider the grounds of appeal on the part of the defendants. These grounds, though stated in various forms, may be substantially regarded as making the single question, whether the statement accompanying the confession of judgment, assailed in this case, and upon which it was based, was sufficient to give the judgment validity as to third persons. The Circuit judge held that the statement was insufficient, basing his conclusion upon various New York decisions cited in his decree. These decisions, upon examination, will be found, with two exceptions, all to be Supreme Court decisions, and not decisions of the court of last resort, and some of them mere Special Term decisions. They were made between the years 1855 and 1861, inclusive, and it is manifest that there is much conflict in the decisions of the Supreme Court of New York, especially among those made within a few years after the adoption of their code of procedure. This may have arisen, as is suggested in one of the

cases, from the fact that the courts of that state, losing sight of the marked difference in the language of the New York act of 1818, with reference to confessions of judgment, and that employed in their code, based their earlier decisions under the code upon cases which had been decided under the more stringent terms of the act of 1818. That act required "a *particular* statement and *specification* of the nature and consideration of the debt," while the New York code, like ours, only requires a "*concise*" statement of the facts out of which the debt arises. The only decisions of the court of last resort in New York, cited by the Circuit judge to sustain his conclusion, are *Chappel* v. *Chappel,* 12 *N. Y.* (2 *Kernan*) 215, decided in 1855, and *Dunham* v. *Waterman,* 17 *N. Y.* (3 *Smith*) 9, decided in 1858. In the former case the statement simply set forth that the indebtedness grew out of two notes particularly described, but did not state what the notes were given for, and in Dunham *v.* Waterman the statement was that the indebtedness arose upon a note given on settlement of accounts. In both of these cases the statements were held to be insufficient, for the very good reason, that to state, as in Chappel *v.* Chappel, that the indebtedness arose on notes, is throwing no light whatever on the facts constituting the liability, for the notes are mere evidences of debt and afford no clue to the origin of the indebtedness. One who had given a note under seal, without any consideration, might safely swear that he was indebted in the amount of such note, but if he is required also to say what was the origin or consideration of the debt, he could not truthfully do so unless there was in fact a *bona fide* indebtedness for which such note was given. In Dunham *v.* Waterman, the only material difference in the statement from that held to be insufficient in the foregoing case, was the fact that it was there stated that the note was given in settlement of accounts, without saying anything as to the nature of the accounts. This, as the court very properly held, added nothing in the way of information as to the origin and consideration of the indebtedness. The nature of the accounts, upon the settlement of which the indebtedness was alleged to have arisen, should have been stated, so as to give creditors a clue by which they could investigate for themselves the honesty of the trans-

action, and without this creditors would have no starting point at which to begin their inquiries.

In *Freligh* v. *Brink*, 22 *N. Y.* 418, decided in 1860, it was held that a statement that the indebtedness arose upon a promissory note given for borrowed money, with the additional statement: "And we hereby state that the sum hereby by us confessed is justly due to the said plaintiff, without any fraud whatever," was sufficient, for the reason that it was not confined to a mere statement of the note, but the consideration of it—borrowed money—was given, and it is difficult to see what more could be required.

In *Neusbaum* v. *Keim*, 24 *N. Y.* 325, decided in 1862, it was held that a statement was sufficient, which, after declaring that the plaintiff had sold and delivered to the debtor large quantities of meat in 1854 and 1855, averred that there was justly due him upon such sales a balance of so much, for which the judgment was taken. In this case it was objected that the statement did not show the amount of meat sold, nor did it show the payments which had been made, nor the prices at which it was sold. But the court said that it was manifest such details were not necessary, and that all the statute required was a *concise*, not a *particular* or *detailed* statement of the facts out of which the indebtedness arose.

In *Hopkins* v. *Nelson*, 24 *N. Y.* 518, decided in 1862, the statement was that "the plaintiff has this day endorsed my notes, payable at bank, for six thousand dollars in all, for my accommodation and to enable me to negotiate said notes." It was objected that the statement should have shown the date, time to run, amount and place of payment of each note so endorsed by the plaintiff, but the court held that such particularity was not required, and that the statement was sufficient.

In *Thompson* v. *Van Vetchen*, 27 *N. Y.* 568, decided in 1863, the statement was that the indebtedness arose on the sale and conveyance by the plaintiff to the defendant of his interest in certain partnership property, and it was held sufficient, though it did not state how the plaintiff was connected with the firm, or what was his interest therein.

*Frost* v. *Koon*, 30 *N. Y.* 442, decided in 1864, again recog-

nizes Lanning v. Carpenter and Freligh v. Brink, in holding that a statement that the debt was for money borrowed, without any specification of time or separate amounts, was sufficient.

From this review of the New York cases it is very manifest that the court of last resort in that state does not require that extreme particularity of statement which the earlier decisions of the Supreme Court seemed to exact, but, on the contrary, all that they require is a *concise*, as contradistinguished from a *particular* or *detailed* statement of the facts out of which the indebtedness arises.

In addition to the foregoing cases decided by the Court of Appeals in New York, we desire also to cite one of the cases relied upon by the Circuit judge for the purpose of extracting from it certain language used by the court, which, we think, more accurately expresses the true rule which should govern in the consideration of questions of this kind than we find anywhere else.

In *McDowell* v. *Daniels*, 38 *Barb.* 143, decided in 1861, the motion was to set aside four judgments upon the ground that the statements were insufficient. In two of the judgments the statements were held to be sufficient, while in the other two they were held to be insufficient. An examination of this case will show the very great extent to which the Supreme Court of that state was disposed to go in exacting the utmost *particularity* of statement instead of the *concise* statement required by the code. But even in that case the court lays down the rule in the following language : " Other creditors of Daniels are not obliged to take his statement under oath that the debt is justly due or to become due. They have a right to inquire into the honesty of the defendant and of the transaction. To enable them to do so— to get on the track of the fraud, if there is any—the statute requires the *concise* statement of the facts. This statement gives enough of the transaction, I think, to enable other creditors of Daniels to inquire into its truthfulness and the honesty of the alleged debt. I do not think it can properly be said that the object of the statute was to compel the debtor to state sufficient of the transaction out of which the indebtedness arose, to enable other creditors to form an opinion, *from the facts stated,* as to the

integrity of the debtor in confessing the judgment. If the debt is questioned, it is not to be presumed that the creditor questioning it will take the debtor's statement, however full. What the creditor wants, and what, I think, the statute intended he should have, is sufficient of the facts to enable him to inquire into the transaction and to form his opinion of the honesty of the judgment *from the facts he shall ascertain.*"

Testing the case now under consideration by this rule, we think the statement upon which the confession was based, will be found amply sufficient and fully sustained by the more recent decisions in New York. The statement here is: "The said judgment arises from the fact that I am indebted to her on account of the purchase and rentals by me of lands to which she was entitled to an interest as one of the heirs of her father's estate, and also to the interest of her mother therein, which she has transferred to the plaintiff and directed me to pay to her, the same not exceeding the amount aforesaid, and the said amount is now justly due to the plaintiff." Here, then, we have a statement of the amount due, the consideration of the debt, the facts out of which such consideration grew, and that the amount was justly due. What more could be required to make it conform to the statute, which only requires the facts out of which the indebtedness arises to be stated *concisely?* If, as is contended for, the statement had proceeded to set forth in detail the items going to make up the amount sworn to be justly due, it would have been very far from that concise statement contemplated by the statute. It fixed definitely the amount of the debt, and showed clearly the origin and consideration of the indebtedness, and, in our judgment, nothing more was necessary. Indeed, since we have learned from the evidence in this case that the judgment was taken for a less amount than that ascertained by calculation, and admitted by the debtor to be really due, by way of compromise, it is difficult to conceive how it would have been possible to make a more definite statement. As was well said in *McDowell* v. *Daniels, supra,* a creditor who was disposed to question this judgment would not, of course, accept the debtor's statement as correct, even if it had been full to the minutest detail. All he would want to know would be what was claimed

E

to be the origin and consideration of the debt, and he would inquire for himself into the details. Here he is informed that the debt originated in the fact that the debtor had been using land in which the creditor had an undivided interest, and for which he was liable to pay rent, and in the fact that he had purchased another interest in the same land for which he had not paid the purchase money, and that this purchase money had been assigned to the plaintiff in the judgment. With these facts furnished to him by the statement, the creditor would have it in his power, by his own investigations, to ascertain how much ought to be due, and it is not to be expected that his action in the premises would be influenced by any details that might be contained in the statement, but by the result of his own investigations, which the facts there stated enabled him to institute. If a statement is simply to the effect that the defendant is indebted to the plaintiff in a certain amount, without stating the origin and consideration of the debt, the creditor is furnished with no starting point from which to commence his own investigations, and, therefore, such a statement would be insufficient. But where, as in this case, the origin and consideration of the debt are stated, the creditor is furnished with such starting point and may proceed with his own investigations, and there is no necessity for a detailed statement of the various items going to make up the amount of the indebtedness. We are, therefore, unable to agree with the Circuit judge that the statement in this case was insufficient.

As to the objections to the transcripts of the judgment docketed in the counties of Kershaw and Sumter, we agree with the Circuit judge that the slight discrepancies or minor deficiencies and irregularities of form pointed out, might be amended, and are not sufficient to render them invalid.

The judgment of the Circuit Court is reversed and the complaint is dismissed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.